AMERICAN NATIONAL BANK *et al. vs.* ORIENTAL MILLS *et al.*

The charter of a corporation provided that the shares of stock " shall be transferred in such manner as shall be prescribed by the by-laws of said corporation." No by-law was adopted regulating the mode of transfer. A by-law, however, directed the treasurer to " keep a book, which shall be taken as a part of the records of the corporation, in which he shall register the names of all the stockholders and the number of shares held by each."

Another by-law prescribed the form of certificates, which were to contain the words, " transferable only in person or by attorney on the transfer books of the corporation and on surrender of this certificate."

Another by-law provided that no private sale of the stock should be valid unless the stock was first offered through the treasurer to the existing stockholders, who were to have a preëmption right for five days, and no sale at public auction should be valid unless ten days' notice was given through the treasurer to the stockholders.

In fact the only stock record book kept was the certificate book, the stubs of which contained the names of the transferor and transferee, the numbers of the old certificate and of the new, the date of transfer, and a receipt for the new certificate signed by the transferee. The surrendered certificates were pasted to the stubs, and were sometimes marked cancelled and sometimes not. Except in a few cases, no written assignments of stock were made or recorded.

*Query,* whether the words of the certificates could be construed as a by-law regulating the mode of transfer.

A regulation governing the mode of transfer of corporate stock is for the convenience of the corporation, and may be waived by it.

*Held,* that the transfers made as above described were good, and conveyed the legal title to the stock.

Naked trustees who hold the legal title to stock, uncoupled with an interest in it, must vote as their beneficiaries direct. If the latter attend corporate meetings and represent the stock, notice of the meetings to the former is immaterial.

A preëmption right in favor of stockholders may be waived by them, and if violated none but a stockholder can object. That stock has been transferred with the consent of the corporation gives rise to an inference that it has been offered in accordance with the right of preëmption.

Executors transferred corporate stock directly to themselves as individuals.

*Held,* that the transfer was unexceptionable.

PETITION for the appointment of a receiver under Pub. Stat. R. I. cap. 237, § 13.

*December* 26, 1891. MATTESON, C. J. This is a petition for the appointment of a receiver of the goods, effects, property, etc., of the Oriental Mills, preferred by certain of its creditors under Pub. Stat. R. I. cap. 237, § 13. It appeared at the hearing that the Oriental Mills is an insolvent corporation; that the petitioners are its creditors, holding more than one fifth of its indebtedness; that its property had been attached by certain other of its creditors within sixty days prior to the filing of the petition; and that it had

refused and neglected, upon request of the petitioners, to execute a third deed of assignment, it having already executed two deeds of assignment, to prevent the attaching creditors from obtaining preferences over other creditors by their attachments.

The Oriental Mills and Samuel Ames, to whom the two deeds of assignment referred to were made, opposed the granting of the petition on the ground that the Oriental Mills had already executed said two assignments, conveying all its property, not exempt from attachment by law, for the equal benefit of all its creditors, with the exception of such preferences as are permitted by Pub. Stat. R. I. cap. 237, § 14. They claimed that one or the other of these assignments was efficacious to transfer the property of the corporation to the assignee, and therefore that there is no ground for the appointment of a receiver; for if the first assignment, made June 9, 1890, several months before the dates of the attachments, was valid, the attachments were invalid; and if the first assignment was invalid and the subsequent attachments were valid, they were vacated by the making of the second assignment within sixty days thereafter, to wit, March 4, 1891.

The attaching creditors, and also the petitioners, insisted that each and both of the assignments were invalid to convey the property of the Oriental Mills, because, as they contend, notices were not given to the persons legally entitled thereto of the meetings at which the officers of the Oriental Mills were authorized to execute the assignments, and therefore that the assignments were unauthorized, and not the legal acts of the corporation and not binding upon it.

The assignments were put in evidence, and the execution of them proved. The charter and by-laws of the corporation, records of stockholders' and directors' meetings, certificate book, the will and codicil of Alfred A. Reed, *Senior*, deceased, the probate thereof, a copy of the bond of the executors of said will and letters testamentary to Alfred A. Reed, *Junior*, and William Gordon Reed, as such executors, were also put in evidence.

Alfred A. Reed, *Jun.*, was called as a witness, and his testimony and the contents of the records proved substantially the following facts: —

The Oriental Mills was incorporated by act of the General

Assembly in 1861. The act of incorporation was accepted and the corporation organized in June, 1862. Alfred A. Reed, *Sen.*, E. W. Cramerus, William P. Robinson, Edward Boit, John T. Coolidge, and Robert S. Sturgis subscribed for all the stock, which was fixed at $235,000.

By the second section of the charter of the Oriental Mills, it is provided, in regard to the transfer of shares, that " said shares shall be transferred in such manner as shall be prescribed by the by-laws of said corporation."

Article 6 of the by-laws, defining the duties of the treasurer, says : " He shall keep a book, which shall be taken as a part of the records of the corporation, in which he shall register the names of all the stockholders, and the number of shares held by each."

Article 9 of the by-laws prescribes the form of certificates of stock, in which are the words : " Transferable only in person or by attorney on the transfer books of the corporation, and on the surrender of this certificate."

Article 10 of the by-laws is as follows : " No private sale of the stock of this corporation shall be valid unless the same shall have first been offered in writing through the treasurer to the then existing stockholders, who shall have the right of preëmption at the selling price, and five days shall be allowed the treasurer to purchase or decline the same. Neither shall any sale of said stock at public auction be valid unless ten days' notice shall be given by the seller to the stockholders through the treasurer."

There are no other by-laws which in any way refer to the stock, or its transfer. There is no by-law prescribing the manner in which the stock should be transferred.

There never was any stock ledger or transfer book of the stock kept by the officers of the corporation except the certificate book. This book contains marginal stubs, setting forth the new certificate number, the old certificate number, the names from whom and to whom transferred, the date of transfer, and a receipt for the new certificate signed by the transferee. Pasted to the marginal stubs, and in some instances marked " cancelled," and in others not, are the old surrendered certificates.

In two or three cases a blank assignment of the surrendered shares is pasted in the book, but in all others, so far as the record

and the testimony shows, there were no written assignments or transfers executed, or recorded upon the books of the corporation, except by the entry of the transfer upon the stub of the certificate book as above stated. The uniform custom of the corporation has been to issue new certificates upon surrender of the old, and to record the transfer upon the stub of the certificate book in the manner stated. The persons holding the certificates thus issued have always been recognized as stockholders by the corporation.

Prior to 1871, Alfred A. Reed, *Sen.*, had bought of the other stockholders and paid for all of the capital stock owned by them, except ten shares each then and since owned by Alfred A. Reed, *Jun.*, and William Gordon Reed, his sons; so that father and sons became, or claimed to be, the sole stockholders in the corporation, the capital stock of which in the mean time had been increased to $350,000.

As Alfred A. Reed, *Sen.*, bought this stock, from time to time, the old certificates were surrendered to the corporation and new ones issued to him in the manner specified, and thenceforward, during his life, he alone was recognized by the corporation as the owner of such stock, and he alone claimed any right or interest in it. The prior stockholders never made any claim to it after the sales of it and the transfers of it to said Alfred A. Reed, *Sen.*, as stated.

Alfred A. Reed, *Sen.*, died in October, 1878. By his will he bequeathed to his two sons, Alfred and William Gordon, pecuniary legacies, and also made them residuary legatees of four fifths of the residue of his estate. The other fifth of the residue was given to them in trust, to hold and pay over the income to their sister, and, after her death, to her children. The estate has never been settled by the executors. The sister has died, leaving one child, a minor.

In January, 1881, the executors transferred, in the way in which all prior transfers had been made, as above set forth, all the stock which had belonged to their father, to wit, 330 shares, to themselves individually, 165 shares to each; and thus, as they supposed and claimed, constituted themselves the sole stockholders in the corporation. New certificates were issued to them, and from that date, January, 1881, to the time of the assignments, they alone

claimed to act, and did act, as stockholders, and they alone were recognized as stockholders by the corporation. Due notice of the meeting at which the first assignment was authorized to be made was given to them. They were present at the meeting, and voted to authorize the assignment which was made June 9, 1890. The assignee accepted the trusts of the assignments, and has acted under it.

In January, 1891, attachments were made of the property, an indefinite claim being set up that there was some flaw in the assignment. Thereupon, within sixty days, a second meeting of the corporation was called, notice being given to all persons who could be legally or equitably interested in the company under the will of Alfred A. Reed, *Sen.*, and the second assignment was authorized and executed.

The corporation subsequently refused to execute any further assignment, and this petition was filed.

In behalf of the attaching creditors, it is claimed that both assignments are invalid, because Sturgis, Cramerus, Boit, and Coolidge never transferred the legal title to their stock to Alfred A. Reed, *Sen.;* that it is the holder of the legal title alone who is entitled to vote upon stock ; that they, therefore, should have been notified of the meetings, and, as they were not, the meetings were illegal.

On the other hand it is claimed that Alfred A. Reed, *Sen.*, did acquire the legal title to the stock purchased by him from the persons named.

The objection urged to the validity of the transfers of stock to Alfred A. Reed, *Sen.*, is based upon the provisions of the charter and by-laws. As we have seen, § 2 of the charter provides that " said shares shall be transferable in such manner as shall be provided by the by-laws of the corporation." As we have also already seen, the corporation never passed any by-laws regulating the mode of making transfers of its stock. It did, however, pass a by-law, viz., article 9, which prescribes the form of the certificate to be issued for its stock. In the form so prescribed, and in the certificates issued, is contained the clause, " Transferable only in person or by attorney on the transfer books of the corporation, and on the surrender of this certificate." It is contended that

this clause constitutes a regulation and definition of the method of transfer, and that its observance was an essential condition to the passing of the legal title to the stock. It is assumed that this clause, which the by-law, article 9, prescribed as a part of the certificate and which is contained in the certificate, is to be regarded as having the force of a provision in the charter, or of a by-law in pursuance of such a provision. We think it may be doubted whether the insertion of the clause in the certificate, though in accordance with a by-law prescribing it as a part of the certificate, can have such an effect. Such a clause is a mere statement, from which it might be inferred that a regulation to that effect existed, but it is doubtful whether any greater effect should be given to it than to estop the corporation in a proper case from denying the existence of such a regulation. In Lowell on the Transfer of Stock, § 90, it is said: "A certificate which contains the statement of such a rule is often referred to as if a regulation could be enacted by issuing a certificate, as it can be enacted by passing a by-law. But the act of issuing the certificate is merely the making of a statement of fact in writing, and it has in itself no legislative force whatever. A certificate which states that the stock is transferable only on the books of the corporation may be evidence that a valid regulation to that effect has been made, and it would make a good foundation for an estoppel if the corporation attempted to deny the existence of such a regulation."

But if we assume that the clause in the certificate is to be regarded as having the force of a by-law enacted in pursuance of the provision of the charter, the question presented is, whether the transfers were sufficient to pass the legal title to the stock. In *Lockwood and others, Trustees,* v. *Mechanics' National Bank,* 9 R. I. 308, 311, this court recognized the rule that, when there is a power, either to the corporation or its directors, to regulate the transfer of stock, or the manner of its transfer, the corporation or its directors may require, by by-law, that the transfer shall be made on the books of the corporation; and in that case the title of a purchaser before entry upon the books, although good as between him and the vendor, is not a legal but a mere equitable title. In the case at bar, the transfers were registered upon the only book ever provided by the corporation relating to its stock, to wit, its

certificate book, which, with the memoranda made by the officers of the corporation upon its marginal stubs, answered the purpose of a transfer book and stock ledger as well as of a certificate book. The old certificates were surrendered and new ones issued in their stead as the stock was from time to time sold, and entries of the transactions were made by the officers of the corporation upon the stubs of the certificate book; but there were no written transfers of the stock from the vendor to the vendee, signed by the vendor or his attorney, upon the books of the corporation, such as were evidently contemplated by the words, " transferable only in person or by attorney on the transfer books of the corporation ; " and there could be no such written transfers, because the corporation had never provided the necessary transfer book for that purpose.

The question then comes down to this, whether, in this state of things, the transfers of stock in the manner stated, as shown by the evidence, were sufficient to vest the legal title to it in the purchaser. In *Marlborough Manufacturing Co.* v. *Smith*, 2 Conn. 579, it was held that where a charter provided that shares should be transferable only on the books of the company in such form as the directors should prescribe, and the by-law established by the directors provided that transfers of stock should be made by assignment on the transfer book, either in person or by authorized attorney, to render a transfer valid, so as to constitute the assignee a stockholder, there must be a written assignment on the treasurer's books, subscribed by the assignor or his authorized attorney ; the mere entry to the credit of the assignee on the treasurer's books of the amount of the stock being insufficient for that purpose. But so great strictness has not generally been insisted on. It has generally been held that the purpose of such a regulation is to afford the corporation and persons dealing with it the means of ascertaining who are its shareholders. Without an entry of the transfers upon its books, it would be practically impossible for the corporation to know who are entitled as its shareholders to vote at its meetings, to whom dividends are to be paid, and who are liable as shareholders to the corporation or its creditors. With such an entry the books become a record showing who at any particular time are the shareholders, and who as such are entitled to the rights conferred, and subject to the liabilities imposed, by

membership in the corporation.   A regulation of this kind, then, being intended merely to promote the convenient administration of the corporate affairs, is given binding effect upon the corporation no farther than is necessary for the accomplishment of that end.   Hence it is competent for the corporation, for whose advantage the regulation is made, to insist upon a strict compliance with the formalities prescribed, if not itself in fault, or to waive them if it shall see fit.   *Chambersburg Insurance Co.* v. *Smith*, 11 Pa. St. 120 ; *Walter's Case*, 3 DeG. & Sm. 149 ; *McNeil* v. *Tenth National Bank*, 46 N. Y. 325, 331; *Isham* v. *Buckingham*, 49 N. Y. 216 ; *Robinson* v. *National Bank of New Berne*, 95 N. Y. 637 ; *Upton* v. *Burnham*, 3 Biss. 431, 520 ; *Laing, Adm'r*, v. *Burley*, 101 Ill. 591, 594, 595 ; Angell & Ames on Corporations, §§ 353, 354 ; Cook on the Law of Stock and Stockholders, § 383. As the Oriental Mills neglected to provide a transfer book upon which stockholders desiring to transfer their shares could make and sign a formal transfer, in person or by attorney, and as it permitted transfers to be made and entered upon its certificate book in the manner stated, we think it must be held to have waived so much of the requirement as related to transfers *in person or by attorney ;* and as it was competent for it to make such waiver, we also think that the entries of the transfers were sufficient to vest the legal title to the stock in the transferees, and that, consequently, they were binding not only upon the corporation, but upon its creditors.   In *The Green Mountain and State Line Turnpike Co.* v. *Bulla*, 45 Ind. 1, it was held, that where the charter of a corporation provided that the shares should be transferable in the manner prescribed by the by-laws, and it was not shown that any by-laws had been adopted, but the certificate provided that the stock should be transferable only on the books of the company on surrender óf the certificate, the officers of the company, and not the assignor of the stock, should transfer the stock on the books.   The court says : " We think the mode of transfer contemplated by the certificate, keeping in view the statute above quoted, is, that when stock certificates have been duly assigned, the officers of the company are to receive the surrender of the old certificates, transfer the stock on the books of the company into the name of the assignee, and issue to him a new certificate of the stock,

if he desire it. This accomplishes all the purposes for which it is necessary that a transfer should be made on the books of the company. It enables the company to know who are its stockholders, and it places the legal title to the stock in him in whose name it stands on the company's books." In *National Bank* v. *Watsontown Bank*, 105 U. S. 217, a statute declared that the stock of a bank should be transferable only on its books in such manner as the by-laws should ordain, but there was no by-law prescribing the mode of transfer. It appeared that a stock ledger was the only book kept by the defendant showing the transfers of its stock, except a book of certificates, the stubs of which showed to whom the corresponding certificate had been issued, and what certificates had been surrendered in lieu of it. The court held that the transfer made by the cashier of the defendant on the stock ledger vested in the transferee a complete title to the stock. In its opinion the court says : " All that is necessary, when the transfer is required by law to be made upon the books of the corporation, is that the fact should be appropriately recorded in some suitable register or stock list, or otherwise formally entered upon its books. For this purpose the account in a stock ledger showing the names of the stockholders, the number and amount of shares belonging to each, and the sources of their title, whether by original subscription and payment or by derivation from others, is quite suitable and fully meets the requirements of the law. Accordingly, when the cashier of the Watsontown Bank received from Tome the certificate, with the authority for its transfer to him duly executed by Powell & Co., and, in pursuance of the request to make the transfer, charged it in the account against the former owners and gave to Tome a corresponding credit, the latter became a stockholder in the bank, invested with the legal title to the stock and with all the rights, powers, and privileges belonging to that character." And see, also, *Haegele* v. *Western Stove Co.* 29 Mo. App. 486, 492 ; *The Chambersburg Insurance Co.* v. *Smith,* 11 Pa. St. 120, 125.

But even if the transfers in question were not sufficient to pass the legal title to the stock, so that Alfred A. Reed and William Gordon Reed had only an equitable title, we do not think that the fact that notice of the meeting which authorized the making of the assignment of June 9, 1890, was given to them, and not to the

former stockholders or holders of the legal title, rendered the action of the meeting void. Alfred A. Reed and William Gordon Reed had the entire beneficial interest in the stock which had been purchased and paid for by their father, even though the transfers were so incomplete that he took only an equitable title. The holders of the legal title were mere naked trustees for their benefit, having a bare legal title not coupled with an interest, and therefore, if they had been notified and had attended the meeting, they would have been bound to vote in accordance with the wishes of the holders of the beneficial interest. *Wilson* v. *Proprietors of Central Bridge et als.* 9 R. I. 590 ; *Ex parte Holmes,* 5 Cow. 426 ; *McHenry* v. *Jewett,* 26 Hun, 453 ; Cook on the Law of Stock and Stockholders, § 612.

Objection is also made to the validity of the transfers to Alfred A. Reed, *Sen.,* because it does not appear that there was a compliance with article 10 of the by-laws, which required that before a sale of the stock the seller should offer it in writing, through the treasurer, to the then existing stockholders. The fact that the corporation permitted the transfers to be made is evidence from which it may be inferred, either that the offer had been made and declined, or that the requirement had been waived. Such inference is strengthened by the fact that, during the years that have elapsed, no objection to the sales or claims to the stock have ever been made by the former stockholders. As the requirement was solely for the benefit of the then existing stockholders, that is, for those who were stockholders at the times the sales were made, they clearly had power to waive it. But even if the offer was neither made and declined nor waived, the requirement being solely for the benefit of the stockholders at the time, we fail to perceive how anybody else is entitled to take the objection.

It is also objected that the first assignment was void, as, under any circumstances, the transfers by the executors to themselves were nullities, and the notices of the meeting at which the assignment was authorized were sent only to Alfred A. Reed and William Gordon Reed individually. Counsel do not state any reason for holding such transfers to be nullities, and no reason occurs to us for so doing.

Our conclusion is, that the assignment of June 9, 1890, was

valid; that the subsequent attachments were invalid; and hence that the petition should be denied and dismissed.

*Joseph C. Ely*, for petitioners.

*William G. Roelker*, for Oriental Mills and their assignee.

*Thomas A. Jenckes*, for Alfred A. Reed *et ux.*

*Thomas C. Greene & Edward D. Bassett*, for Merchants' National Bank.

*James Tillinghast*, for Commercial National Bank.

*Francis Colwell & Walter H. Barney*, for Traders' National Bank.

*Nicholas Van Slyck & Cyrus M. Van Slyck*, for National Bank of North America.

*John T. Blodgett*, for First National Bank and George L. Littlefield, attaching creditors.