JEHU L. ALLEN *v.* THEODORE STEWART and PAUL GIL-
LES, Sheriff of New Castle County.

New Castle, September Term, 1895.

Injunctions — corporations — transfer of stock; Statutes —
construction of.

1. The provisions of section 18, chapter 147, volume 17, Dela-
ware Laws, Revised Code, 576, that "the shares of
stock in every corporation in this State shall be deemed
personal property, and shall be transferable on the
books of the corporation in such manner as the by-laws
shall provide, and whenever any transfer of shares shall
be made for collateral security, and not absolutely, the
same shall be so expressed in the entry of such trans-
fer," does not make an assignment on the books of the
corporation necessary to vest title in a transferee of
shares of stock.

2. An assignment on the books of a corporation is not neces-
sary in order to vest title in the transferee of shares of
stock, either in the case where the by-laws of the cor-
poration are silent upon transfers, or in the case where
its by-laws do define a mode for such transfer, *unless*
the charter or some general law expressly requires an
assignment on the books.

3. The provisions of the by-laws of a corporation defining
a mode of transferring shares of stock, do not exclude
all other modes, unless the charter, or some general
law, negatives any other mode of transfer.

4. In the absence of any statutory provision, or of a by-law
upon the subject, shares of stock in a corporation are
transferable as any chose in action, and like them, the
transfers of stock may be either legal or equitable.

5. The books of a corporation are private. They are not public records, open to the inspection either of the public or a creditor of one of the stockholders.

6. C. W. E., who was president of the J. P. Co., being indebted to complainant, gave him a bond, and assigned, as collateral security, 200 shares of stock in said company and a policy of insurance. Coupled with such assignment was a written agreement between them, that complainant would not interfere with the management of the said company, would retransfer a certain part of said stock upon payment of a certain part of said indebtedness, or would retransfer the whole of said stock upon payment of the whole of said indebtedness; but that on failure of the conditions of said bond, or to keep up said insurance policy, said assignment of the stock and the policy should become absolute. The transfer of said stock was not made on the books of said company, but notice of the transfer was served on C. W. E. as its president. The charter and the by-laws of the company were entirely silent as to the transfer or assignment of shares of stock. Subsequently, T. S., one of the defendants, recovered a judgment against C. W. E., issued a *fi. fa.*, with clause of attachment, and attached said 200 shares of stock, and advertised same for sale. On bill to enjoin the sale of said stock by T. S., held, that it was not necessary· that the shares should be transferred on the books of the company, and that the injunction should be granted.

INJUNCTION BILL.— Bill filed by Jehu L. Allen against Theodore Stewart, and Paul Gilles, sheriff of New Castle County, to restrain them from selling 200 shares of stock of the Journal Printing Company; a corporation existing in this State, under *fi. fa.* attachment against Charles William Edwards.

Harry Emmons, for complainant.

Shares of stock in an incorporated company which have been transferred by an assignment executed by the holder and by a delivery of the stock certificates, with a power of attorney signed in blank, authorizing the transfer of said shares on the books of the company, are not attachable as the property of the assignor, although the transfer had not been formally made on the books of the company at the time of laying the attachment. And this is true whether such transfer is absolute or merely collateral.

1. The remedy by attachment is essentially a creature of the statute, and the statute on which it is founded is strictly construed. Wade on Attachment, §§ 2, 3, 325 and 333; Am. & Eng. Ency. of Law, vol. 1, 894; id., vol. 8, 1105; Van Norman v. Circuit Judge, 45 Mich. 204, etc.

2. The only provision in our laws for the attachment of shares of stock in an incorporated company is found in the Revised Code 1893, pages 568, 569.

This law evidently contemplates that the legal title to the shares of stock attached must be in the debtor as whose property it is attached. A merely equitable right or interest in personal property is not attachable. Freeman on Executions, § 116. And the language of our statute seems to be meant to put shares of stock on a par with other personal property in this respect. Section 13 says, " the shares of any person " may be attached; and in section 14, the officers of the company are required to certify the number of *shares owned* by the debtor, with the *number*, or *other marks* distinguishing

the same. And the language of sections 15 and 16 bear out the same construction.

3. Our statutory provision for the transfer of stock does not say that stock shall be transferable *only* on the books of the corporation, but says, " the shares of stock in every corporation in this State shall be transferable on the books of the corporation in such manner as the by-laws may provide." Rev. Code 1893, 576, § 18.

4. The by-laws of the Journal Printing Company make no provision whatever for the transfer of stock.

5. On the 4th day of September, 1894, Charles William Edwards assigned to the complainant 200 shares of the capital stock of the Journal Printing Company. Mr. Edwards was at that time, and has contin- ued ever since to be, the president of said company. The assignment was in writing, and contained a blank power of attorney, signed by said Edwards, authorizing a transfer of said stock on the books of the company. The original certificates were delivered to the complainant with the assignment and power of attorney. These shares of stock have not yet been transferred on the books of the company. The attachment at the suit of Theodore Stewart was laid in the hands of said Edwards as president of the Journal Printing Company, in December, 1894. The following authorities support the contention of the complainant. Angell & Ames on Corporations, §§ 353, 354; Cook on Stocks, §§ 487, 378, 379; United States v. Vaughn, 3 Binn. (Penn.) 394; confirmed by 1 Sumn.; Sargent v. Essex Marine Railway Co., 9 Pick. 201; Broadway Bank v. McElrath, 13 N. J. Eq. 24; Mt. Holly Turnpike Co. v. Ferree, 17 id. 117; Bank v. Nassau Bank, id. 496; N. Y. &

H. R. R. Co. v. Schuyler, 34 N. Y. 77; Newberry
v. Detroit Mfg. Co., 17 Mich. 141; Tenney's Appeal,
59 Penn. St. 398; Scripture v. Francetown Soapstone
Co., 50 N. H. 571; McNeil v. Bank, 46 N. Y. 325,
331; Cook v. Hollett, 119 Mass. 148; Johnson v.
Loflin, 103 U. S. 800, 804; Dickinson v. Central Nat.
Bank, 129 Mass. 279; Boston Music Hall v. Carry,
id. 435, 436; Bank v. Elliott Nat. Bank, 7 Fed. Rep.
369; Norman v. Circuit Judge, 45 Mich. 204; Otis
v. Gardner, 105 Ill. 436; Robinson v. Bank, 95 N.
Y. 637; Turnpike Co. v. Gerhab (Penn. Sup.), 13
Atl. Rep. 90; Thurber v. Crump, 6 S. W. Rep. 145;
Wilson v. St. Louis & S. F. R. R. Co., 18 id. 286; Laird
v. Wheaton Mill Co., 52 N. W. Rep. 268; Kirn v. Day
(La.), 12 So. Rep. 6; Goyer Cold Storage Co. v. Wild-
berger, 15 id. 235; Bank of Commerce v. Bank of New-
port, 63 Fed. Rep. 898; Colt v. Ines, 31 Conn. 25.

J. W. Ponder, for respondent.

Whenever a transfer of shares is made for collateral
security, and not absolutely, the same shall be so ex-
pressed in the entry of said transfer. Rev. Code, 576,
§ 18; or, vol. 17, Del. Laws, chap. 147, § 18.

The transfer-books of a company shall be the only
evidence as to who are the stockholders. Vol. 17, Del.
Laws, § 22.

A transfer or assignment of stock after attachment or
sale shall be void. Rev. Code, p. 569, § 15.

An attachment may be levied upon stock which has
been mortgaged or pledged and the equity of redemp-
tion sold. Cook on Stocks and Stockholders, § 484;

Edwards v. Beuget, 7 Cal. 162; Mechanics, etc.; Co. v. Association, 14 N. J. Eq. 219; Manus v. Bridgewater Bank, 73 Ind. 243; People's Bank, etc. v. Gridley, 91 Ill. 457; New England v. Chandler, 16 Mass. 275; Norton v. Norton, 43 Ohio St. 509.

An attachment has precedence over an unregistered transfer made before the levy of attachment, and a pledge like a sale of stock is protected against attachment for the pledgor's debts only by registry.   Cook on Stocks and Stockholders, § 489; State v. Bank, 89 Ind. 302; Shipman v. Aetna Ins. Co., 29 Conn. 245; Colt v. Ives, 31 id. 25; Pinkerton v. Manchester R. R. Co., 42 N. H. 424; Oxford, etc., Co. v. Brund, 6 Conn. 552; Webster v. Bear, etc., Co., 5 Cal. 185; Fisher v. Bank, 5 Gray, 373; Rock v. Nichols, 3 Allen, 342; Sabine v. Bank, etc., 21 Vt. 353; Bayne v. Burr, 24 Me. 256; In re Murphy, 51 Wis. 519; Conant v. Bank, 1 Ohio St. 298; Bank v. Bank, 7 Fed. Rep. 369; Sargeant v. Ins. Co., 8 Pick. 90; Peoples v. Elmore, 35 Cal. 653; Northcup v. Newton, 3 Conn. 544.   See also 69 Hun, 180.

Stock transferred, but not entered on the books as required, is attachable by an unnotified creditor in his suit against the transferor.   Fort Madison v. Bank, 71 Iowa, 270; Ryan v. Campbell, id. 760.

Under a statute such as exists in this State, the lien of an attaching creditor of the holder of shares on the books of the company would not be devested by a subsequent sale of the outstanding certificate, although the purchaser should be an innocent purchaser without notice.   Morawetz on Private Corporations, 192, § 196; R. R. Co. v. Griffith, 76 Va. 913.

WOLCOTT, CHANCELLOR.— Charles William Edwards, being the owner of 200 shares of the capital stock of the " Journal Printing Company," a corporation under the laws of the State of Delaware, represented by the certificates of said company numbered 11, 12 and 13, respectively, and being indebted to the complainant in a large sum of money, to-wit: $16,000; did on the 4th day of September, A. D. 1894, execute an assignment of the said 200 shares of the said capital stock unto the said complainant as security for said indebtedness, with a power of attorney in blank to sell, assign, transfer and set over all or any part of said stock, and to make and execute all necessary acts of assignment and transfer thereof; and did deliver said certificates of stock into the possession of the complainant, who now holds them.

The said Charles William Edwards was the president of the said the " Journal Printing Company," and was at once duly notified of said assignment and power of attorney, and of the delivery of said certificates to the complainant.

At the time of the assignment and delivery of the said certificates of stock as aforesaid, the said complainant and the said Edwards entered into an agreement which, after reciting an objection made by the said Edwards, that the securities which represented the original indebtedness, were tainted with usury, and that the same was afterwards by mutual agreement removed by deducting from the original indebtedness the sum alleged to be usurious, and by the execution and delivery of a bond and warrant of attorney by the said Edwards to the complainant, bearing date September the 4th, 1894, for the real debt of $15,400, the

amount acknowledged to be the true debt; and also, after reciting that the 200 shares of the said stock had been assigned as collateral security for the payment of the said bond, as well a certain life insurance policy, issued by the Equitable Life Assurance Society of the United States, on the life of the said Edwards, for the sum of $10,000; provided, that the said complainant would not interfere in any manner with the said Edwards in the control of the said company, or enter said bond so long as the conditions thereof were complied with by the said Edwards, and that the said securities were to be retransferred and delivered up to the said Edwards immediately upon his payment of the said debt, and also that upon the payment of $1,000 of said whole debt, ten of the said 200 shares of stock should be retransferred to the said Edwards; and provided, also, that upon a failure for thirty days by the said Edwards to comply with any of the conditions named in said bond, or to keep said life insurance policy fully paid up, according to the conditions thereof, the said bond should thereupon become immediately due and payable, and the assignment of said shares of stock and of the said life insurance policy should become absolute; and still further provided, that upon failure as aforesaid, the complainant might sell the said shares of stock, and if there should be any balance over and above the sum due on the bond, from the proceeds of the sale, should account for the same with the said Edwards.

In the month of December, 1894, a *fieri facias*, with a clause of attachment annexed, being No. 27, as of the February Term of the Superior Court, in and for New Castle County, A. D. 1895, was issued upon a

judgment recovered by Theodore Stewart, one of the defendants in this cause, against the said Edwards, the said judgment being No. 51, as of the November Term of said court, A. D. 1894, and the said 200 shares of stock were attached; whereupon the said Charles William Edwards, as president of the said " Journal Printing Company," left with the sheriff of New Castle County the following certificate:

" This is to certify that there are 200 shares of stock represented by certificates Nos. 11, 12 and 13 standing upon the books of this company in the name of Charles William Edwards, but notice of the assignment of said shares by the said Charles William Edwards was received by this company on or before the fourth day of September, A. D. 1894, although no transfer thereof has as yet been made on the books of the company.

(Signed.) " JOURNAL PRINTING COMPANY,

" By CHARLES WILLIAM EDWARDS,

" President."

At the February Term, A. D. 1895, of the said Superior Court, an order was obtained for the sale of said stock, and in pursuance of which the said sheriff advertised said stock for sale, to be sold on the 17th day of March, 1895, at 2 o'clock, P. M.

After the issuance of the said *fieri facias*, with the clause of attachment, and after the making of the certificate aforesaid by the president of the " Journal Printing Company," and before the day fixed for the sale, the said Charles William Edwards defaulted in the payment of the premium due on the said life insurance pol-

icy, thus violating the condition of the said agreement entered into by him with the complainant as aforesaid.

Neither the charter nor the by-laws of the said the " Journal Printing Company " contains any provision requiring the assignment of its stock to be made upon its books.    In the said bill, the complainant prayed as follows:

First. That the complainant may be declared, adjudged and decreed to be the real and sole owner of the said shares of stock.

Second. That the said defendants may be perpetually enjoined from selling under the said order of the said Superior Court, the said shares of stock, or any portion thereof, or any interest therein, and also that a preliminary injunction may issue.

Third. That the complainant may be permitted and directed to sell said shares of stock in accordance with said agreement.

The only question that I shall consider in disposing of this rule is the one involving the effect of the transfer of the shares of stock by Edwards to the complainant (independently of the agreement contemporaneous therewith), upon the rights of Stewart, the attaching creditor, one of the defendants in this cause.    Or, in other words, did the simple assignment and delivery by Edwards to the complainant of the certificates of the 200 shares of stock vest in him a title superior to any rights which the attaching creditor, Stewart, gained by his process, or was it necessary that the assignment of the shares should have been made upon the books of the " Journal Printing Company."

In the statement of facts in the bill, and not denied

by the defendants, it is alleged that nothing is contained
either in the charter or the by-laws of this corporation
requiring that the transfer of shares of stock be made
upon its books.    Despite this fact, however, it is urged
by the solicitor for the defendants that the provision of
section 18, chapter 147, volume 17, Laws of Delaware,
entitled "An act concerning private corporations"
(Rev. Code, 576), makes such an assignment necessary
to vest title in a transferee.    The provision referred
to is as follows:

" The shares of stock in every corporation in this
State shall be deemed personal property, and shall be
transferable on the books of the corporation in such
manner as the by-laws may provide, and whenever any
transfer of shares shall be made for collateral security,
and not absolutely, the same shall be so expressed in
the entry of such transfer."

This contention of the solicitor for the defendants
might be met with the reply that the very provision
which states that the shares of stock shall be transfer-
able upon the books of the corporation, also expressly
stipulates in the continuation of the very same sen-
tence, that this transfer shall be made " in such manner
as is provided for in the by-laws of the corporation;"
and that inasmuch as no manner of assignment what-
ever is provided for in the by-laws of the " Journal
Printing Company," this provision of the general stat-
ute is inapplicable.

Assuming, however, that the by-laws of the " Jour-
nal Printing Company " did contain a provision defining
a mode of transferring its shares of stock upon its books,
yet I do not think that that mode of transferring the

shares would be exclusive of all other modes, unless the charter or some general law negatived any other mode of transfer.

In the absence of any statutory provision, or of a by-law upon the subject, shares of stock in a corporation are transferable as any chose in action; and like them, the transfers of stock may be either legal or equitable. It is true that an equitable transfer cannot be enforced at law in the name of the transferree, but it can be so enforced in a court of equity. For example, a bond assignable by its very terms, the assignment of which by our act of Assembly requires the ceremony of a seal and one witness to authorize the assignee to maintain a suit in his own name, may nevertheless be transferred without the formality of a seal or witness so as to exempt it from attachment process, in the hands of a *bona fide* purchaser or transferee.

I can see no reason for giving a provision in any statute like the one referred to, such a strict construction as that contended for. If such were the established rule of construction, the facilities for the negotiation of loans and other commercial transactions upon the basis of shares of stock in corporations would be very seriously impaired. The spirit of the whole statute negatives any such narrow construction. Provisions similar to the one quoted, when found either in the charter itself, or in the by-laws, or in some general statute, have been held by the most learned text-book writers and the most eminent judges as applicable only to the relation existing between the corporation and its stockholders — to the questions, who shall vote, to whom dividends shall be paid, and to enable the corporation to protect any

Opinion.

lien it may have upon the stock as between itself and a stockholder indebted to it.   It is certainly difficult to conceive how any other construction can be given to such a provision.   Surely, not on the ground of public policy.   The requirement that transfers of stock shall be made upon the books of the corporation can by no possibility be of benefit to any other person than a stockholder of the corporation itself, for the simple reason that such transfers are as secret and as private in their nature, so far as the public is concerned, as would be the private delivery of a stock certificate from the pocket of one individual to that of another.   The books of a corporation are private.   They are not public records open to the inspection either of the public or a creditor of one of the stockholders, and the strictest requirement that transfers of stock be made upon the books could give no notice to any individual outside of the stockholders themselves.   Therefore, the contention that the transfers of shares of stock should be made upon the books of the corporation upon the ground that such transfers give to the act greater publicity, and thereby prevent members of the corporation from obtaining false credit, utterly falls to the ground.   If further argument were needed to prove the untenability of the position assumed by the defendant's solicitor, it would be found in the fact that prior to any statutory enactment rendering shares of stock liable to attachment process, provisions similar to the one now under consideration were well nigh universally incorporated in the charters or by-laws of all corporations, thus substantiating the position that I have taken that they were de-

signed to apply simply to relations between the corporation itself and its stockholders.

The broader and more liberal view of this provision is fully sustained by the last paragraph of section 22 of the general statute cited by the solicitor for the defendants.    It is as follows:

" The stock ledgers, or, if there be none, then the transfer-books of the company, shall be the only evidence as to who are the stockholders entitled to examine such lists " (voting lists), " or the books of the company, or to vote in person or by proxy at any election."

Herein are to be found the reasons for the insertion of the paragraph in section 18, making provision for the transfer of shares or certificates of stock upon the books of the corporation.    The legislature deemed it proper to make the transfer-books of the company, in the absence of stock ledgers, the only evidence as to who is entitled to examine the voters' lists, the books of the company, and to vote at any election.    If the legislature had not provided a means whereby the stock might be transferred upon the books of the company, it would have placed itself in the absurd position of requiring a particular kind of proof of certain facts without making any provision for obtaining that proof. The conclusion seems, therefore, irresistible that the interest of the general public contended for by the solicitor for the defendants, did not enter the scope of the legislative intent, inasmuch as the recital of the reasons for the former provision is expressly restricted to relations existing only between the stockholders and the corporation itself.

The California cases cited by the defendants' solic-
itor, and so confidently relied on by him, do not sustain
his contention because there is no analogy between the
California statutes and that of our State.    The Cali-
fornia statute in its phraseology differs radically from
ours.    The former provides that " no transfer of stock
shall be valid for any purpose whatever except to ren-
der the person to whom it shall be transferred liable
for the debts of the company according to the provisions
of this act, until it shall be entered therein " (the books
of the corporation), " as required by this statute, by an
entry showing to and from whom transferred."    Our
statute simply provides that shares of stock " shall be
transferable upon the books of the corporation in such
manner as the by-laws may provide."    There is no
language in it to make the statutory mode of trans-
ferring stock exclusive of any other mode, as that em-
ployed in the California statute.

The case of Fisher et al. v. Essex Bank, 5 Gray, 373,
is also relied upon as authority for the narrow rule of
construction insisted upon in this case.    Here, how-
ever, we are again confronted with an equally wide dif-
ference in the language of the Massachusetts statute, and
that of our own.    The paragraph in the Massachusetts
statute providing for the transfers of shares of stock
ir a corporation, expressly declares that such shares are
transferable *only* on the books of the corporation.
Chief Justice Shaw, in construing this paragraph of the
statute, lays stress upon the word " only," as negativing
any other mode of transfer.    The learned judge said,—
" that the word ' only ' carries an implication as strong
as negative words could make it.    It was not to pre-

scribe one mode, leaving others unaffected; it made that mode exclusive."

The same criticism applies with equal force to the Illinois cases, and nearly, if not all, the other cases cited by the solicitor for the defendants, because of the manifest variance between the statutes of those States and of our own State. The rule is, therefore, made absolute, and a preliminary injunction as prayed for is ordered.