There are two matters before the court. The first is the preliminary one of whether the motions should be granted which were presented by Gill's solicitor to the effect that the case be opened for the taking of testimony by Gill at some indefinite time in the future, or, failing that, that the court defer decision of the intervention controversy until the return of a commission issued to a solicitor in England for the taking of medical testimony upon the alleged inability of Gill to attend in this court on January 25 last. If these motions be refused, the second matter before the court is whether on the testimony produced by the complainant Gill should be ousted as an intervening party.
First, then, should either of the motions made by Gill's solicitor be granted? It should be noted at the outset that the intervention issue is one which Gill has himself precipitated by seeking to become a party defendant. On his own application, he was admitted such party for the purpose of filing in the cause any motion or other pleading on or before September 15, 1927. The record fails to disclose the filing of any motion or pleading by Gill within the time fixed by the order admitting him as a party, or at any other time. The solicitor for Gill stated that he made to the court a motion on November 2, 1927, but that because the defendant corporation presented on that day a new answer, the Chancellor suggested that Gill should in the light of the new answer file a new motion. This I think is correct. No new motion, however, was ever filed in Gill's behalf. In order to bring the matter to a head, the solicitor for the complainant then filed his answer to Gill's intervention petition attacking Gill's right to be a party on the ground of his lack of status as a stockholder and praying that he be accordingly dismissed as an intervenor.
The matter thus raised of Gill's right to intervene was set down on December 9, 1927, for hearing a month and sixteen days thereafter, viz., on January 25, 1928. Prompt notice of the order setting the hearing for that day was given to Gill's solicitor. This was all that was necessary under the rules in order to bind Gill. But Gill was further notified of the order by mail, such notice reaching him in Scotland not later than December 19, thirty-six days in advance of the hearing date.
When that date arrived (January 25), Gill was not present. No word had been received from him. The complainant was present with her witnesses, she and one of her witnesses having travelled from Florida to Wilmington and two other witnesses having journeyed from Scotland. Gill's solicitor moved for an adjournment to a later date. The matter was put over for two days. On the twenty-fifth *Page 825 
the solicitor for Gill cabled to know the earliest date Gill could attend a hearing on the intervention issue. He received a reply on the twenty-sixth that Gill was unable to travel and that two medical certificates were being posted that day. The hearing was: proceeded with on the twenty-seventh and concluded, so far as the complainant's side of the issue is concerned, on February 3, 1928. In the interval another cable dated January 31, 1928, reached the solicitor for Gill stating that Gill was ill, that his recovery was uncertain and medical certificates had been posted.
Based on the foregoing cables, the solicitor for Gill moved, upon the closing of the complainant's testimony on February 3, for a continuance. Discussion of the motion was put over until February 8, at which time the solicitor for Gill, possessing no more information than before, moved that no time be set for Gill's attendance to present testimony until the arrival of the medical certificates referred to in the cablegrams. The solicitors for the complainant resisted this application stating that they were in receipt of cable and telephone information from Scotland to the effect that Gill was up and about and travelling around in apparently good health. My conclusion from all that appeared before me was that Gill was not seriously sick. It seemed to me also that he had not been at all diligent in attending to the litigation which his own act of intervening had thrust upon the court. Witnesses had been drawn here from a distance — from so far away as Scotland to meet the issue which Gill's intervention had precipitated. It was manifest that if the case was left open for Gill to appear at his convenience, the complainant would have to undergo the expense of bringing these witnesses back again to meet the possibilities of Gill's testimony. If Gill was sick, it was impossible, from what appeared, to say when he became so. It may have been that his alleged sickness developed in time, if properly communicated, to enable the complainant to head off her witnesses, and also to afford the complainant an opportunity to check up on his claim of illness well in advance of January 25. No word, however, of Gill's illness was received until after the hearing date arrived, and then only after a prodding cable from his solicitor. The burden, I think, was on Gill to satisfy the court not only that he was too ill to attend, but to show as well that notification of the fact to the other side was not delayed to the point of prejudice. Being exceedingly skeptical concerning the genuineness of the alleged illness, I refused to grant the continuance asked. It is manifest that if Gill was too ill to leave Scotland, he knew the fact as far back as the last sailing for the United States. Yet news of his illness never came until after the hearing was scheduled to start. I could not when I ordered the hearing closed, nor can I now, accept the view of his solicitor that responsibility for Gill's apparent inattention to the litigation is attributable to him, the solicitor. The court-must deal with parties as though they were actually present in the person of their solicitors and as though they knew all their solicitors knew. Any other principle in the conduct of causes would be exceedingly impracticable. But aside from this, Gill himself is conceded to have had notice of the hearing date as early as December 19.
Under these circumstances, I felt that no indulgence should be shown Gill who initiated the intervention controversy unless indeed what appeared to be light-hearted indifference to the court whose jurisdiction was invoked and a spirit of aloofness to its procedure, should be accepted as a good ground for such indulgence — a view which no one would of course maintain.
The main cause is one in which a receivership was sought for a corporation whose affairs, it was claimed, were being most flagrantly mishandled. Gill is charged to be the one against whose alleged misdeeds the receivership is sought as the only possible corrective remedy. Ordinary experience in such matters is enough to convince any one that where internal disputes exist within a corporation, one of the parties may find it highly to his advantage by procrastination to delay the progress of litigation which, if he be in the wrong, will eventually give or contribute to relief against him. Without going into details concerning the claims of the respective solicitors as to the necessity of determining finally whether a receiver should be appointed for this corporation, it is sufficient to say that I had the feeling, when Gill's request was made for an indefinite postponement under the circumstances before outlined, that his purpose was simply to gain some such advantage as that just mentioned. Accordingly the request for a continuance was refused.
Since then, the medical certificates referred to in the cables to Gill's solicitor have arrived and supply the basis of the renewed alternative motions for additional time or for a commission, made by Gill's solicitor on March 2, 1928. A reading of these certificates instead of shaking the impression I entertained when the hearing was ordered closed has rather confirmed me in that impression. The dates of these certificates are significant. The first one is dated January 8, 1928, and the second January 16, 1928. It is therefore apparent that Gill realized as early as January 8 that he was required to be present here for the scheduled hearing. The obtaining of the certificate on that day cannot be explained on any other theory. Furthermore, he continued under the same realization until January 16. Nothing has been shown which in any wise removes from the situation the continued knowledge on Gill's part that he was under a duty to attend to his litigation in this court as ordered. Now if he knew as early as the *Page 826 
eighth that he could not travel, why did he not communicate the fact to his adversary? To have done so would have afforded the other side an opportunity to confirm his alleged claim of illness, and would also have allowed the giving of timely notice by the complainant to head off her witnesses from a great distance, thereby saving expense to her and great inconvenience to them. The fact that he did not promptly communicate information of his claimed illness serves very rightly, it seems to me, to raise a doubt touching the bona fides of his present claim.
The substance of the certificates is not very satisfying. The first states that he was suffering from the results of a very severe attack of influenza and was not therefore fit to journey to America. The second one, given eight days later, states that it would be a matter of grave risk to Gill's health were he to undertake a sea voyage at present. But in the second certificate he is said to be suffering from excessive weight which affects for the time being certain of his internal organs. No mention is made in the second certificate of his suffering from the results of an attack of influenza. Neither of the certificates indicates the length of the duration of Gill's trouble. Nor do they agree upon its nature.
Now against these certificates the complainant has produced fourteen affidavits made by persons who swear that Gill was out and about on January 24, 25, 27, 29, 30 and on February 1 and 5. He was attending a funeral, driving a motor, attending church; stepping off a train and all the affiants state that he appeared to be in the best of health.
The showing thus made by the medical certificates and the affidavits tends to confirm me in the view entertained on February 3 that Gill should be granted no further continuance of the hearing on the intervention and the motion of March 2 requesting such continuance will be denied. As to the motion that I direct a commission to England to take testimony upon Gill's condition prior to January 25, this will be denied. It is incumbent on Gill to sustain the burden of showing to the court that his absence is justified and not upon the court to initiate a plan involving long delay by which the court can ascertain if such burden was capable of being sustained by Gill himself.
In the foregoing I have given to the question of a continuance a somewhat detailed discussion largely because of the realization that a determination of Gill's right to intervene, if predicated on his status or lack of status of stockholder might be of serious consequences to him. So much did this aspect of the matter concern me, that if a way could be found to advance the main receivership cause to a conclusion without passing on Gill's status of a stockholder, I would have welcomed such a course. Accordingly, before the medical certificates and counter affidavits arrived, I suggested to Gill's solicitor that Gill might possibly avoid a decision upon his status of stockholder as determinative of the intervention issue, by moving to withdraw his request to intervene. This suggestion, however, was not accepted.
I am compelled, therefore, to proceed to pass upon Gill's right to be an intervenor on the evidence produced by the complainant, which is all the evidence in the case.
Second, then, does Gill possess the status of stockholder which is a necessary pre-requisite to his right to intervene? On the evidence there can be only one finding upon this question. The evidence is clear that though 6,001 shares of stock stand in Gill's name on the books of the corporation, yet he never was the beneficial owner of them. He gave no consideration of his own for them. The complainant paid for them and is the true owner. Gill was only a convenient instrument in the various corporate actions whereby the corporation acquired property in exchange for its stock. The consideration given for the property transferred to the corporation was in equity the complainant's and the stock issued by it in Gill's name was the complainant's. Immediately upon its issuance, Gill endorsed the stock in blank for transfer and delivered it to the complainant. As between the complainant and Gill, though the stock so endorsed in blank and delivered has not been transferred on the corporation's books, the former and not the latter has title thereto. State ex rel. Cooke v. New York-Mexican Oil Co., 32 Del. (2 W. W. Harr.) 244, 122 A. 55; Lippman v. Kehoe Stenograph Co., 11 Del. Ch. 190,98 A. 943; Allen v. Stewart, 7 Del. Ch. 287, 44 A. 786. Gill has no beneficial interest in the stock which he endorsed by transfer and handed to the complainant, who was originally intended to be the owner and who paid, or procured to be paid, the entire consideration therefor. Having no interest in the stock, it can be no concern of Gill whether a receiver is appointed for this corporation, or not.
An order dismissing Gill as an intervenor will therefore be entered.
The solicitor for Gill has requested that if such an order is entered, it be without prejudice to Gill's right to assert his claim to be a stockholder in other litigation. How such a reservation of right could in consonance with an order based on the absence of the right be saved to Gill, I am at a loss to see. If however, the solicitor for Gill can produce satisfying authority in support of his request, it will be granted.[1]
[1] See 141 A. 827.
 *Page 264