In the Matter of
CANAL CONSTUCTION COMPANY,
a corporation of the State of Delaware.

*New Castle, Jan.* 15, 1936.

*Ivan Culbertson,* for petitioner.

*William S. Potter,* of the firm of Ward & Gray, for defendant corporation and challenged directors.

THE CHANCELLOR: This case turns on whether 21,093 shares of common stock of Canal Construction Company standing on the books of the corporation in the name of Thomas F. Shea, administrator of the estate of John J. Shea, Sr., deceased (the father of the administrator), were entitled to be voted at the election.

The facts regarding said shares are as follows. John J. Shea, Sr., was the record owner of 33,750 shares of the common stock of said corporation. Upon his decease, his son, the petitioner, was appointed his administrator. He caused the stock to be transferred upon the books of the corporation to his name as administrator. John J. Shea, Sr., left to survive him a widow and seven children. Under the law of Tennessee, the state of his residence, the said shares, subject of course to the rights of creditors of the intestate, were, it appears, distributable to his widow and children in

equal parts unless sold. The distributees agreed to take the shares in kind. The eight distributees having agreed that the stock should be distributed in kind, the administrator had the corporation issue to him eight separate certificates, six of them being for 4,219 shares each and two of them for 4,218 shares each. The administrator agreed in writing that upon the closing of the estate, he would distribute to each of the distributees shares in the number called for by each of said certificates according to a stipulated schedule.

There was a suit filed by one of the distributees in the Chancery Court of Shelby County, Tennessee, against Thomas F. Shea, individually and as administrator of his father, in which the relief sought was a decree requiring the defendant to close the estate and make distribution thereof. The suit eventuated in an agreed settlement which contemplated a distribution of the stock according to the schedule. A decree was duly entered. The administrator endorsed the several certificates for transfer and delivered the same. The settlement of the estate was concluded and the administrator was discharged.

The recipients of five of the certificates, viz., Thomas F., Arthur J., Leonard T., John J., Jr., and Walter C. Shea, neglected to present them for transfer upon the books of the corporation. The shares called for by the five certificates aggregated 21,123.

When differences over control of the corporation arose and a contest consequently developed over the election of directors at the next annual meeting of stockholders, Thomas F. Shea applied to the Chancery Court of Shelby County in Tennessee, praying that the order discharging him as administrator of the estate of John J. Shea, Sr., be set aside and revoked, and that the letters of administration theretofore issued to him be reinstated, or that additional letters be issued to him. The only unadministered asset which the estate of John J. Shea, Sr., was alleged to possess was the right to vote the shares of stock which the five distributees above mentioned had omitted to have trans-

ferred to their own names and which continued therefore to stand on the books of the company in the name of Thomas F. Shea, administrator. The court set aside the previous order of discharge and appointed Thomas F. Shea administrator of the estate of John J. Shea, Sr. The petition alleged that the shares referred to would not be transferred to the names of the five parties named so as to qualify them to vote the same at the forthcoming annual meeting. Three of the five parties do not appear to have had notice of the presentation of the petition. These three parties owned 4,219 shares each—a total of 12,657. The three parties are Leonard T. Shea, Walter C. Shea and John T. Walsh, administrator of Arthur J. Shea, deceased. The record before me shows that certainly two and probably all of these three parties were opposed to having the stock owned by them voted at the meeting by Thomas F. Shea, administrator of the estate of John J. Shea, Sr.

At the meeting, Thomas F. Shea tendered a ballot signed by himself as administrator of John J. Shea, Sr., representing 20,093 shares standing in his name as administrator. Why the ballot was for that number of shares instead of 21,123 the number belonging to the five distributees whose certificates had not been transferred on the books to themselves, is not explained.

The ballot was rejected for two reasons. One was that the certificate of the appointment of Thomas F. Shea as administrator, which he presented as evidence of his authority, showed that he had been appointed administrator of John J. Shea in contrast to John J. Shea, Sr. This objection was highly technical and in view of the facts was rather frivolous.

The other reason for rejecting the ballot was that as to three of the certificates, the stock represented thereby was the property of Walter C. Shea, Leonard T. Shea and John T. Walsh, administrator of Arthur J. Shea, deceased, respectively, that the true owners had not only not author-

ized Thomas F. Shea to vote their stock but were in fact out of sympathy with him in the course he was pursuing.

The only serious question in the case now before the court is whether the reason last mentioned for rejecting the ballot is one that deserves to be rejected in this review proceeding.

For the purposes of the case that part of the 20,093 shares owned by Thomas F. Shea individually and by his mother as purchaser from John J. Shea, Jr., who was agreeable to his voting the stock owned by her, may be disregarded. This is for the reason that if it was not permissible for the administrator to vote the shares owned by Walter C. Shea, Leonard T. Shea and John J. Walsh, administrator of Arthur J. Shea, deceased, or any two of them, the result of the election would not be changed, even though he had been allowed to vote all the other shares.

That all the distributees were the true owners of the stock cannot be questioned. When Thomas F. Shea, administrator, delivered the certificates duly endorsed for transfer, he thereby, so far as he as administrator was concerned, parted with all title to the stock. His subsequent discharge as administrator, which marked the closing of the estate, conclusively evidenced what the endorsement and delivery had theretofore indicated, viz., that from thenceforth he as the registered holder ceased to have any claim whatsoever to a property interest in the shares. As between him and the several distributees, his rights as owner were completely transferred to the latter. This transfer of rights was in no wise dependent for its completeness upon a formal registration of the stock upon the books of the corporation in the names of the transferees as the new owners. *Allen v. Stewart,* 7 *Del. Ch.* 287, 44 *A.* 786; *Lippman v. Kehoe Stenograph Co.,* 11 *Del. Ch.* 190, 98 *A.* 943; *Chadwick v. Parkhill Corp.,* 16 *Del. Ch.* 105, 141 *A.* 823; *State v. New York-Mexican Oil Co.,* 2 *W. W. Harr.* 244, 122 *A.* 55; *Bankers' Mortgage Co. v. Sohland,* 3 *W. W. Harr.* 331, 138 *A.* 361. When a registered holder of stock parts with

his interest therein by endorsement and delivery of the certificate to a purchaser, the only party, other than the new owner, who can have any possible interest in the matter of a transfer of the stock on the books from the name of the old to the new owner is the corporation; and in the event of a controversy between them over the ownership, the corporation's interest is one of indifference towards the claimants as individuals. Whether one or the other prevails in the controversy can be of no concern to the corporation. It is interested only in definiteness of ownership, not in its individuality. The interest of the corporation becomes of substantial moment only when questions arise in connection with the relations it bears to those who are its stockholders, such as questions of rights to dividends, rights to inspect books, rights to vote at stockholders' meetings, etc. *Allen v. Stewart, supra; State v. New York-Mexican Oil Co., supra.*

In the matter of election by the stockholders of directors for the corporation, the statute provides that "each stockholder, shall * * * be entitled to one vote in person or by proxy for each share of the capital stock held by" him, etc. (*Section* 17, *Rev. Code* 1915, § 1931, as amended by 38 *Del. Laws, c.* 91, § 2,) ; and "the original or duplicate stock ledger shall be the only evidence as to whom (*sic*) are stockholders entitled * * * to vote in person or by proxy at such election." *Section* 29 (*Rev. Code* 1915, § 1943, as amended by 36 *Del. Laws, c.* 135, § 15).

It is contended that as Thomas F. Shea, administrator appeared on the stock ledger as the registered owner of the shares in question, he should have been allowed to vote the same. This is on the assumption that the law fixes the stock ledger as the final and conclusive source of information from which the list of those entitled to vote may be ascertained. That the inspectors of the election should be guided by the ledger is doubtless true. But that this court, in the exercise of its reviewing jurisdiction under *Section* 31 of the act (*Rev. Code* 1915, § 1945, as amended by 35

*Del. Laws, c.* 85, § 15), is bound by the showing made on the books is not true. *Italo Petroleum Corp. v. Producers' Oil Corp.,* 20 *Del. Ch.* 283, 174 *A.* 276. The Supreme Court of New York appears to have entertained the same view with respect to a similar statute in that jurisdiction less clear in its intendments than ours. *Strong v. Smith,* 15 *Hun,* 222. Of the cases cited by the petitioner to the contrary, only one appears to me to rule directly upon the point. It is *People ex rel. Probert v. Robinson,* 64 *Cal.* 373, 1 *P.* 156. But in that case the statute invalidated the transfer, except between the parties, unless it was entered on the books of the company. The court rested its decision on the language of the California statute. Our statute contains no such condition precedent which must be complied with before a transfer of rights can be recognized as valid. This difference between the California statute and our own was noted and commented upon by Judge Rodney in *State v. New York-Mexican Oil Co., supra.* The statute of California is distinguishable from ours in other particulars which I shall not pause to enumerate. If the citation which the petitioner makes from *Thompson v. Blaisdell,* 93 *N. J. Law,* 31, 107 *A.* 405, 406, *viz.,* "we see no reason why a vendor who is still registered as a stockholder cannot vote by proxy," be accepted as a decided point notwithstanding its character as *dictum,* it nevertheless is not tantamount to saying that in every case the registered holder should be allowed to vote, on the theory that the stock ledger is conclusive of his right. The case of *Witham v. Cohen,* 100 *Ga.* 670, 28 *S. E.* 505, cited by the petitioner in this connection, in so far as it touches the question, appears to be adverse to his contention. In that case it was held that the defendant who had sold his stock and delivered to the plaintiff an endorsed certificate, was not entitled to vote it at an election of directors, notwithstanding he was still the registered owner on the books, and so was liable in damages to the plaintiff for injury done him by such voting.

As between a transferror who has parted with all beneficial interest in stock and his transferee, the broad equities are all in favor of the latter in the matter of its voting. *Moon, et al., v. Moon Motor Car Co.*, 17 *Del. Ch.* 176, 151 *A.* 298. While the transferee may not himself be qualified to vote because he had not caused the stock to be registered in his name before the twenty day period next preceding the meeting mentioned in *Section* 17 of the statute (*Moon, et al., v. Moon Motor Car Co., supra*), it does not necessarily follow that the transferror may exercise the voting right in defiance of the transferee's wishes. So far have courts recognized the equity of the true owner of stock to control its voting power as against the registered holder, that the latter has been required to deliver a proxy to the former (*Vowell v. Thompson*, 3 *Cranch, C. C.* 428, 442, *Fed. Cas. No.* 17,023), and a dry trustee has been held to be bound to vote stock in accordance with the wishes of the beneficial owner (*American Nat'l. Bank v. Oriental Mills*, 17 *R. I.* 551, 23 *A.* 795).

If bills were filed by Walter C. Shea, Leonard T. Shea and John J. Walsh, administrator of Arthur J. Shea, to enjoin Thomas F. Shea, administrator, from voting the stock standing in his name but in reality belonging to the complainants contrary to their wishes, it can hardly be doubted that, under the facts appearing here, an injunction as prayed would be ordered. The only question that would merit examination in such case would be whether the complainants were the true owners of the stock. Under the facts as shown, that question would not be open to doubt.

If, then, the petitioner would be prevented from voting the stock in suits by the owners directly challenging his right to do so, it follows in this review proceedings that the court ought not to recognize his right to vote, for if it were not so, the result would be that the court would countenance the enjoyment of a right by indirection which by direction it would denounce. The provisions of *Section* 31 of the act (*Rev. Code* 1915 § 1945, as amended by 35 *Del.*

*Laws, c.* 85, § 15) providing for review of corporate elections are sufficiently broad to justify that view of the court's power. The section contains the following paragraph:

"The Chancellor in any proceeding instituted under this Section shall have power to determine the right and power of persons claiming to own stock, to vote at any meeting of the stockholders authorized by or referred to in this Section."

The very clear intendment of that paragraph is to the effect that the Chancellor, in determining "the right and power of persons claiming to own stock, to vote, etc.," is not confined in his inquiry to a mere inspection of the stock ledger. He is empowered to examine all pertinent evidence with the view of reaching a determination of where justice lies.

In the case *sub judice,* there is no room for debate upon the question of where the right and justice of the controversy lies. The petitioner has no interest whatever in the stock of the three persons heretofore referred to. The office of administrator, in right of which he was the registered holder of their stock, had ceased to exist. Thus, in the most complete manner all interest in the stock was severed from him as administrator of the estate. When controversy brewed over the question of control, he undertook to revive himself as administrator and, having done so, then sought to use the voting power of the stock of others to accomplish ends which to them were objectionable. A court of equity ought not either by direction or indirection lend its aid to the accomplishment of his inequitable purpose.

The conclusion is that the registered holder of stock will not be recognized in equity as entitled to vote the same in hostility to the wishes and desires of its owners, who lack only the formality of a transfer on the books to make not only their title but as well the evidence thereof complete and absolute in all respects. Whether it would be otherwise if the registered holder voted or proposed to vote in accordance with the desires of the true owner, it is not necessary in this case to determine.

The petition will be dismissed.