[Argued October 31, 1892; decided November 28, 1892.]

## J B. SLEMMONS *v.* J. B. THOMPSON ET AL.

[S. C. 31 Pac. Rep. 514.]

MANDAMUS — To COMPEL TRANSFER OF CORPORATE STOCK.— Under Hill's Code, § 3229, providing that the stock in all private corporations is to be deemed personal property, and subject to attachment, levy, and sale, and the corporation, in case of such sale, required to make the necessary transfer thereof to the purchaser on the books of the company, mandamus will not issue commanding a transfer to a purchaser at execution sale, unless his right to the possession thereof is clear and unquestionable.

IDEM — CODE, § 593 — MARKET VALUE OF STOCK — REMEDY AT LAW.— Mandamus will not issue against a corporation in Oregon except for the neglect of the proper officers to perform some duty which the law enjoins and where there is no plain and adequate remedy at law. The fact that corporate stock has no market value, does not affect the law-remedy of damages for refusing to transfer it on the stock books; but where the officers of the corporation have conveyed away its property and rendered it apparently insolvent, there is no adequate remedy at law, and mandamus will issue to compel a transfer of stock to a purchaser at an execution sale. *Durham* v. *Monumental M. Co.* 9 Or. 41, distinguished.

Multnomah County: E. D. SHATTUCK, Judge.

Application by J. B. Slemmons for a writ of mandamus to compel the Clarnie Land & Improvement Company to transfer to him certain shares of its stock which he had purchased. Writ denied, and plaintiff appeals. Reversed.

*Edward B. Watson (James F. Watson* on the brief), for Appellant.

*Geo. H. Durham ( Chas. B. Bellinger* on the brief), for Respondents.

LORD, C. J.—This is a proceeding by mandamus to compel the transfer of seventy-five shares of stock of the Clarnie Land & Improvement Company, and to allow an inspection of the records of the corporation. The record discloses that an application was made by the plaintiff for a writ of mandamus against J. B. Thompson, as secretary of the Clarnie Land & Improvement Company, to compel him to transfer seventy-five shares of the capital

stock of said company to plaintiff on the books of the corporation, and also to allow his attorney to inspect such books; that thereafter the defendants made their return to the alternative writ issued by the court, denying all the material allegations thereof, and setting up various defenses, among them, that the stock in question was owned by other persons than the plaintiff; that the pretended transfer to him was simulated, fictitious, and fraudulent, and that he was not the owner thereof; that his claim was made at the instigation of one D. P. Thompson, for whom he held said stock, and solely for the purpose of embarrassing and interfering with the management of the affairs of the corporation; that plaintiff had instituted a suit in equity against the company, its president, and one C. K. Harbaugh, to establish his rights to the stock in controversy, and to participate and share in the profits and business of the corporation, and to fully adjudicate his pretended rights, etc.; that all the defendants had appeared, etc.; that whatever rights, as owner of such stock, the plaintiff may have had could be fully and fairly adjudicated in such suit, which was then pending and undetermined in the equity department of the circuit court.

The plaintiff replied to the return, and the matter being at issue, was tried, and judgment rendered for the defendant, dismissing the alternative writ. Thereupon the plaintiff asked and obtained leave to file an amended petition and writ. This amended alternative writ sets up that the stock of the company consists of three hundred and fifty shares of the par value of one hundred dollars each, and that seventy five of these shares are fully paid up, the remainder being unpaid in any part; that the plaintiff purchased these seventy-five shares in 1891 from Samuel T. Stephens, administrator of the estate of Thomas F. Stephens deceased, who obtained the same by purchase and assignment at an execution sale; that the defendants have colluded and conspired together to depreciate the value of said seventy-five shares of paid-

up stock; have executed a pretended deed of conveyance in the name of the corporation of all its property, of the value of thirty thousand dollars, over and above all legal incumbrances thereon, to one C. K. Harbaugh for a nominal consideration of ten dollars, but with a secret agreement for the sale of said property by Harbaugh to the defendant Rathbun, and the payment of any excess over said incumbrances to said J. H. Rathbun for his own use and benefit, etc.. With the exception of the alleged collusion for the purposes therein stated, and the making of Rathbun and the Clarnie Land & Improvement Company parties, the amended alternative writ is in substance and effect the same as the one previously referred to, and to which several defenses were set up showing the conflicting rights to the stock in controversy. A demurrer was filed to this amended alternative writ by the defendants J. B. Thompson and J. H. Rathbun, which the court sustained and dismissed the writ, giving judgment against the plaintiff and in favor of the defendants for their costs. It is from this judgment that the appeal is brought.

The record of the previous proceeding, and the demurrer to the amended alternative writ and judgment thereon, are presented as one consecutive record. We have set them out as briefly as we could without obscuring the facts. The previous proceeding is treated as a necessary part of the appeal in order to explain the action of the court in allowing the amendment of the writ, and the object the plaintiff sought by it. This was to give the plaintiff an opportunity to add such additional allegations or facts as he might think would establish his right to relief by mandamus, notwithstanding the result of the previous proceeding or any matter arising out of it, which the trial court was understood to be invited to bear in mind when passing on the demurrer. In each instance, the trial court dismissed the writ for the reason that mandamus was not an appropriate remedy to try or determine the questions involved, basing its ruling on the decision of this court in the case of *Dur-*

*ham* v. *Monumental M. Co.* 9 Or. 41. That decision was based on two points—*first*, that the purchaser of stock under an execution sale is not entitled to a writ of mandamus to compel its transfer on the books of the corporation when the ownership of such stock is in dispute; and, *second*, that, except under an execution sale, the purchaser of stock is not entitled to the writ to compel its transfer when there is an adequate remedy at law. In that case, the general proposition that mandamus would not lie to compel the transfer of stock upon the books of a private corporation in cases where the stock in question has been sold at a private or voluntary sale, was conceded; but it was maintained, for reasons that will presently appear, that a different rule prevailed where the stock in question has been the subject of a sale upon execution, notwithstanding the disputed ownership of it arising out of a private sale to other parties prior to the commencement of the action.

Under the corporation laws of this state then and now the stock in all private corporations is to be deemed personal property, and subject to attachment, levy, and sale, and the corporation in case of such sale is required to make the necessary transfer thereof to the purchaser on the books of the company: Hill's Code, § 3229. By force of this section, backed by the case of *Bailey* v. *Strohecker*, 38 Ga. 260 (95 Am. Dec. 388), decided under a similar statute, the plaintiff in the Durham case claimed that he was entitled to the writ to compel the transfer of the shares he had purchased. It is not doubted that if the plaintiff's right to the possession of such stock had been clear and unquestionable, requiring no litigation to settle it, he would have been entitled to the writ to compel the transfer of the shares he had purchased at the execution sale. It was the fact that the ownership of the shares was disputed,—that other parties not before the court were admitted by the demurrer to be the owners of such shares prior to the commencement of the action,—that induced this court to deny the writ, as not

being adapted to investigate and determine disputed
rights to property, and to hold that its proper office was
to command a duty to be performed where the legal right
was clear and not in dispute.    As it had been previously
held that the office of the writ under the Code was pre-
cisely the same as it was under the common law ( *Warner
v. Myers*, 4 Or. 75), it necessarily resulted that it could
not be used even under an execution sale of stock to
compel the transfer of such stock to the purchaser on
the books of the corporation unless his right to it was
clear, and not requiring litigation to settle.    The right
given by statute to the purchaser of stock at an execu-
tion sale to have it transferred was not thought by the
writer of that opinion to invade this principle, or alter
the nature or object of the writ.    Hence, when it was
admitted that the ownership of the shares was in dis-
pute, and litigation would be required to settle it, neces-
sarily, upon principle, mandamus would not lie, and so
the court held in that case.

Turning now to the matter in hand, as the issue made
by the return to the original alternative writ involved a
litigation of the ownership of the shares in question, the
ruling of the trial court was undoubtedly within the case
of *Durham* v. *Monumental M. Co.* 9 Or. 41, and that writ
was properly dismissed.    If the facts set up as a defense
in the return to the first alternative writ shall be consid-
ered as present in the decision upon the demurrer to the
amended alternative writ, there can be no doubt that this
writ too was properly dismissed.    Although the original
proceedings are brought up as a part of this appeal, and
apparently the decision of the trial court was made upon
that theory, as is urged, it must have been under the cir-
cumstances ; yet it is difficult to understand how we
can consider the amended writ otherwise than upon
the sufficiency of its allegations to entitle the plaintiff
to the particular relief sought.    Ordinarily, when a
pleading is amended, the original pleading ceases to
be a part of the record, because the party pleading,

having the power, has elected to make the change: *Wells* v. *Applegate*, 12 Or. 209 (6 Pac. Rep. 770). Much of the brief of the defendants is consumed in the statement of this matter, as much of their argument based on it is urged in support of the ruling of the court in dismissing the writ. Under such circumstances, we have felt bound to state it; and if we could consider it, the case would come to an end at once, as there can be no question but that the ruling of the court on the first application was correct. Besides, if there were such defenses as disputed ownership of the shares requiring litigation to settle, or the pendency of a suit in equity between the same parties for an adjudication of the same matter, they ought to have been pleaded; otherwise they cannot be considered. We must look, therefore, to the facts alleged in the amended writ, which by the demurrer stand admitted, to determine whether the plaintiff shows himself entitled to relief by mandamus.

By the amended writ it appears that the plaintiff is the purchaser of the stock in controversy at private sale, and that it is the only paid-up stock of the corporation, and that the defendants—its president and secretary— are conspiring and colluding to depreciate the value of such stock; that they have disposed of the property of the corporation by a pretended conveyance, but upon a secret trust for the sole use and benefit of the defendant J. H. Rathbun, and in fraud of the rights of the plaintiff.

Under the provision of our Code, § 593, the writ of mandamus "may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station. The writ shall not issue in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law." The effect of these provisions is, that, as against the corporation, the writ can only issue for a neglect of the proper officer of the corporation to perform some duty which the law enjoins, and there is no other plain and

adequate remedy. In the case at bar, the breach of duty alleged is the refusal of the corporation to transfer this stock and enroll the plaintiff on its books as a stockholder, and the fraudulent acts of its agents in disposing of its property under a secret trust for private advantage in fraud of the rights of the plaintiff, and which render the corporation apparently insolvent. This corporation is of a purely private character, organized and operated for private gain merely. "It is charged with no public duty or trust in the management of its affairs that is not imposed upon an unincorporated association or partnership engaged in a like enterprise": *Freon* v. *Carriage Co.* 42 Ohio St. 37 (51 Am. Rep. 794). If the refusal to transfer this stock is a breach of corporate duty to the plaintiff as an individual, and he has at the same time a plain and adequate remedy at law to redress the wrong or injury, he has no right to the writ. In such case he stands on no better footing than any other individual suffering an injury from the refusal of his partners or associates in business to perform some duty devolving on them, and has no better right to the use of such writ to redress his injury. In one case as the other, where compensation in damages for such breach of duty can be readily ascertained, the law has provided an adequate remedy, which must be resorted to.

That an action for damages will lie for wrongfully refusing to transfer shares of stock, is conceded, but it is claimed that it will not furnish an adequate remedy in the present case (1) because such stock, being the only paid-up stock, possesses a peculiar value over other stock of the corporation that cannot be estimated in damages; (2) that being the only paid-up stock of its kind, it could not be replaced by purchase of other shares in market; (3) that as it was the only stock of its kind, it could have no market value; and (4) that the wrongful and fraudulent acts of the defendant in transferring the property upon a secret trust has destroyed any market value for such stock, and rendered the corporation apparently

insolvent. Each of these objections is based on the ground that the remedy at law is inadequate to ascertain the damages to which the plaintiff is entitled, and necessarily each is to be considered independently upon its own merits. It is said that this stock being the only paid-up stock of the corporation, possesses, by reason of this circumstance, a peculiar value over other stock of the corporation, which is not ascertainable in damages. This likens such stock to a favorite thing, which, on account of the *pretium affectionis*, has an extrinsic value which is not ascertainable in damages. The fact that some stock of a corporation may be more valuable than other stock by reason of money payments, does not impart to it the value of a favorite thing, or indicate that the value of such stock cannot be properly estimated upon legal principles. It must have some peculiar kind of value arising out of circumstances that impart to it the quality of a favorite thing, so that its actual value is not the measure of damages, before that doctrine can be invoked. There is language in the books assigning as a reason why mandamus will not lie to compel a transfer of shares, that the plaintiff, by recovering the value of the stock, may replace it by purchasing other shares in the market. But it is not meant by this that if the stock of such corporation is not the subject of sale in open market so that such shares could not be replaced by the purchase of other shares with the amount recovered for them, the plaintiff would be entitled to the writ notwithstanding the action at law would fully indemnify him for their value. It is only meant that where there is an open market for such shares, and the market value of them can be recovered by action, the plaintiff may replace them so that there cannot be any necessity or even a desire of possessing the identical shares: *Shipley* v. *Mechanic's Bank*, 10 Johns. 484. Where recovering the value of the stock would indemnify the party, the writ ought not to be granted: *Murray* v. *Stevens*, 110 Mass. 95.

It is also urged, that as this is the only stock of its

kind, it could not have any market value, but it is not
perceived how that circumstance stands in the way of
estimating its actual value.    There are many corpora-
tions the stock of which is not the subject of sale in open
market and possesses no known market value though
such stock has an actual value.    When the stock has no
market value, it may be somewhat more difficult, de-
pendent upon the circumstances, to ascertain its actual
value, than it would be if it had a known market value.
The rule in assessing damages is not dependent on a
market value, but the actual value is to be determined
under all the circumstances.    In *Freon* v. *Carriage Co.* 42
Ohio St. 37 (51 Am. Rep. 794), where it was claimed that
the damages were not ascertainable because the stock
had no market value, the court says : "In actions for the
conversion of personal property, such as these shares,
the damages are not limited to the market value of the
stock.    Its actual value, to be determined under all the
circumstances, such as the dividend-making capacity, the
good will, etc., etc., is the measure of damages."    So
far, at least, we do not think that the presence of these
circumstances in the case at bar renders the damages
incapable of ascertainment, or doubtful, so as to affect
the adequacy of the remedy at law.    Unless, therefore,
the last objection assigned renders the remedy at law
inadequate to establish the plaintiff's damages, the writ
will not lie.

The last objection is predicated upon the idea that
the fraudulent acts of the defendant, as alleged, have
destroyed any market for such stock, and rendered the
corporation apparently insolvent.    Assuming the facts
to be true as alleged, the presence of such fraudulent
impediments necessarily depreciates the value of such
stock, destroys its market, and deprives the corporation
of its property, and apparently renders it insolvent.
The corporation is stripped of its property, and, though
fraudulently done, until set aside, it affects the solvency
of the corporation, and necessarily the value of its stock

Such being the case, does not the presence of these fraudulent impediments affect the adequacy of the remedy at law to ascertain the damages to which the plaintiff is entitled? Stock that is valuable may have no known market value, yet its actual value may be ascertained by taking an account of the property and assets of the corporation, its dividend-making capacity, etc. But if the corporation has been deprived of its property by fraudulent conveyances, while they may be set aside in equity and the corporation restored to its rights, they cannot be considered as so set aside in the trial of an action at law in the computation of damages. It is true, the defendants admit that the conveyances are fraudulent, but the effect of such admission is only for the purposes of this case; it does not have the effect to set them aside, or that the defendants will consider them as set aside in an action at law for damages. While equity will set them aside upon proof of the secret trust and fraud, the plaintiff, not being a stockholder, cannot invoke the jurisdiction of equity, and until these conveyances are set aside he cannot obtain a judgment for the actual value of such stock. As the effect of these fraudulent contrivances is apparently to deprive the corporation of its property, and to so affect its solvency as to render the actual value of the stock of so precarious a character, so doubtful and uncertain, as to be practically incapable of ascertainment, it results that the remedy at law is inadequate to compensate the plaintiff in damages for the actual value of such stock for the refusal to transfer it.

It is not material that the plaintiff may resort to his remedy in equity and secure a decree which shall compel a registry of his shares and enroll him as a stockholder, whereby he will be put in possession of his admitted legal rights, and be placed in a position to aid the corporation in setting aside the fraudulent conveyances by which the defendants have deprived it of its property and rendered its stock practically valueless. The existence of a remedy in equity is not a bar to the issuance of

the writ. The rule is that the writ of mandamus will not lie in any case where another legal remedy exists, and it is only used to prevent a failure of justice. By legal remedy is meant a remedy at law. Nor has section 534 of the Code made any change in this regard. The existence or non-existence of an adequate remedy at law, under the ordinary forms of legal procedure, is the test whether or not the writ shall issue: *Durham* v. *Monumental M. Co. supra.* So that though the plaintiff might obtain redress by resorting to equity, that, of itself, is not a conclusive objection to the application.

By the demurrer the defendants admit that the plaintiff is the owner of the stock in question, and that the refusal to transfer it is wrongful, and that as agents of the corporation they have colluded and fraudulently transferred its property on a secret trust for the sole benefit of one of such agents. The legal consequences of these admissions are, that the legal right of the plaintiff to have such shares transferred is clear and unquestionable, and that his legal remedy for compensation in damages has been rendered inadequate by the fraudulent contrivances of the defendants. Where the legal right to the possession of the shares is clear and unquestionable, involving no litigation to settle it, and where there can be no recovery of their value at law, the writ lies, not as a matter of discretion, but of right, as the appropriate relief to prevent a failure of justice. In such case, the writ of mandamus is the right arm of the law, which needs its assistance to be enforced.

While our statute does not directly impose the duty upon the corporation to make such transfer of shares to the purchaser upon its books, nevertheless such duty is imposed by reasonable construction and implication to make such transfer, and the refusal of the proper officer of the corporation to perform such duty is the gist of the action: Hill's Code, § 3228; *Durham* v. *Monumental M. Co. supra.* As a consequence, we think, as the record stands, the plaintiff was entitled to the writ. In view of the

state of the record and the claim of counsel upon it, the ruling of the court below as based on *Durham* v *Monumental M. Co. supra,* the importance of the matter involved, and the ability with which it has been presented and discussed, the case has necessarily required of us, and we have felt bound to give it, an extended examination.

It results from the views herein expressed that the judgment must be reversed.