STATE OF DELAWARE, upon the relation of FRANK L. COOKE, *vs.* NEW YORK-MEXICAN OIL COMPANY, a corporation of the State of Delaware, and LEONARD T. SAUNDERS.

1.  MANDAMUS—SUPERIOR COURT HAS EXCLUSIVE POWER TO ISSUE.
    The writ of *mandamus* is issued exclusively by the Superior Court.

2.  MANDAMUS—REMEDY NOT AVAILABLE, WHERE LEGAL RIGHT DOUBTFUL.
    *Mandamus* will never be granted in a doubtful case; there must be a clear legal right.

3.  MANDAMUS—ABSENCE OF OTHER ADEQUATE LEGAL REMEDY NECESSARY TO RELIEF.
    *Mandamus* will never issue, where there is another adequate legal remedy.

4.  MANDAMUS—"WRIT OF MANDAMUS" LEGAL REMEDY.
    The "writ of *mandamus*" is an extraordinary legal remedy for the enforcement of legal rights, functioning exclusively to coerce performance of pre-existing duties.

5.  MANDAMUS—ASSIGNEE OF CERTIFICATE OF STOCK NOT ENTITLED TO MANDAMUS TO COMPEL REGISTRATION, REMEDY AT LAW OR IN EQUITY BEING ADEQUATE.
    An assignee cannot compel registry of a transfer of stock on the corporate books, since the assignee has an adequate remedy at law to recover damages, and at equity to compel registration and issuance of a proper certificate.

6.  CORPORATIONS—UNRECORDED STOCK TRANSFERS HELD GOOD AS AGAINST SUBSEQUENT ATTACHMENT AGAINST RECORDED HOLDER.
    Stock in a Delaware corporation càn be transferred without actual recording on the corporate books, so as to vest the stock in the transferee, unaffected by subsequent attachment in a suit against the recorded holder.

7.  MANDAMUS—BUYER OF SHARES OF STOCK CAN COMPEL RECORD TRANSFER ONLY BY PROTECTING CORPORATION AGAINST OUTSTANDING INTERESTS.
    Where a buyer at a judicial sale secures shares of stock, knowing that the former owner had parted with title prior to attachment, he cannot compel transfer on the corporate books, without surrendering the stock certificate or furnishing a bond against outstanding interests; possession of the certificate of stock being the important thing under the statutes, nowithstanding *Rev. Code* 1915, § 2011, making confirmed sales of stock as effective as if made in accordance with charter and by-laws, and assignments after attachment void.

8.  MANDAMUS—RETURN TO ALTERNATIVE WRIT IS CONCLUSIVE.
    The return to an alternative writ of *mandamus* is taken to be true.

9.  ATTACHMENT—ATTACHMENT LOOKING TOWARD SALE OF STOCK DEFINED.
    An attachment looking toward the sale of stock is in the nature of an *ex parte* proceeding, not a garnishment, and the company is not made a party to the suit, but merely gives a certificate showing the number of shares standing in the debtor's name.

(*March* 20, 1923.)

PENNEWILL, C. J., and RODNEY, J., sitting.

*George N. Davis* for the relator.

*Herbert H. Ward* (of Ward, Gray & Neary) for defendant.

Superior Court for New Castle County, March Term, 1923.

MANDAMUS, No. 176, November Term, 1921.

From the facts in this case it appears that on February 24, 1922, proceedings were commenced by foreign attachment against one Bernabe Barrios; that under these proceedings the sheriff of New Castle county served the writ of attachment upon the resident agent of New York-Mexican Oil Company, the defendant company, and received from him a certificate showing that the number of shares of the said Barrios as appearing on the books of the said company was 482,100, which said shares were then and there attached. No appearance being entered by Barrios and no bail given, judgment was afterwards obtained and the amount ascertained by an inquisition in the sum of $2,991.03. Subsequently the shares attached were sold by the sheriff and purchased by Frank L. Cooke, the relator. The sale was afterwards confirmed. Thereafter a certified copy of the proceedings was left with the defendant company with a request for a transfer of said shares to the name of the relator with a further demand for the issuance to him of a new certificate for the 482,100 shares of stock, which demands the defendant company refused.

The relator thereupon filed his petition for a writ of *mandamus* to compel the defendant company to transfer the stock and issue the new certificate. The defendant in due time filed its return to the alternative writ of *mandamus* of which return the following is a brief summary so far as material to the decision in this case:

That prior to the attachment the judgment debtor Barrios had assigned 5,000 shares of the stock attached to one Virginia H. Hamilton, which said assignment had actually been transferred on the books of the company four days before the attachment, and a new certificate issued, although the resident agent of the de-

fendant company in Delaware had not been acquainted with such facts; that also prior to the attachment 246,500 additional shares of stock attached had actually been sold and assigned to three different persons by the said Barrios and the certificates therefor actually delivered, although the transfer of said stock had not been made on the books of the defendant company; that all of these facts were made known to the relator in writing prior to his purchase of the said stock at sheriff's sale. The defendant company further states its ignorance as to whether any additional shares had been disposed of by Barrios prior to the attachment. The relator has filed a motion to quash the return to the alternative writ.

RODNEY, J., delivering the opinion of the court:

In this case a petition was filed for a writ of *mandamus* to do two things: (1) to compel the defendant company to transfer on its books the stock in controversy to the name of the relator; and (2) to issue to the relator a new certificate for the shares so transferred.

Before taking up the two objects of the application, it may not be improper to set out some general principles governing the writ of *mandamus* as existing in Delaware so as to apply them to this case.

[1] In England, prior to the statute of Anne, the writ was a prerogative one, so called because the power to issue it was vested in the judges of the King's Bench, the court in which the sovereign was supposed to be personally present. In Delaware it is issued exclusively by the Superior Court.

Whether in this state it is still a prerogative writ in a supervisory sense (*McCoy v. State*, 2 *Marv.* 543, 36 *Atl.* 81 [1896]), or whether it has been divested of many of its ancient and prerogative features (*Richardson v. Swift*, 7 *Houst.* 137, 30 *Atl.* 781; *Brumley v. J. & M. Paper Co.*, 3 *Boyce* 118, 80 *Atl.* 350), there are certain principles, among others, to which our courts have ever adhered and which have considerable application in the present controversy:

[2] (1) The writ will never be granted in a doubtful case; there must be a clear legal right. *Road Commissioners v. New Castle*, 2 *Penn*. 466, 47 *Atl*. 374.

[3] (2) The writ will never issue where there is other adequate legal remedy. *Hastings v. Henry*, 1 *Marv*. 287, 40 *Atl*. 1125; *McCoy v. State*, 2 *Marv*. 543, at *page* 562, 36 *Atl*. 81; *Bay State Gas Co. v. Content*, 4 *Penn*. 497, 56 *Atl*. 1120.

[4] (3) The writ is a legal remedy for a legal right. *Union Church v. Sanders*, 1 *Houst*. 100, at *page* 123, 63 *Am. Dec*. 187.

It is, I apprehend from all the authorities, an extraordinary legal remedy; that is, it is an extraordinary remedy for the enforcement of legal rights, being extraordinary as indicative that it is only available when other adequate legal remedies are lacking, and yet there must be a plain legal right to justify the issuance.

The writ has been called the "flower" of the jurisdiction of this Court (*Knight v. Ferris*, 6 *Houst*. 283), and it can neither increase nor diminish the duty which the law prescribes and its function is not to create a duty but only to coerce the performance of a pre-existing duty. In *Townes v. Nichols*, 73 *Me*. 515, the writ is called "the right arm of the law."

[5] With these general principles, as declared in this state, in mind, we can approach the particular controversy with confidence. It is practically admitted by the counsel for the relator that mandamus will not lie to compel the transfer of stock on the books of a company where the change in the title to the stock was brought about by contract of the parties. The great weight of authority sustains this view. The right to a *mandamus* to compel the transfer of stock on the corporate books must not be confused with the right to a *mandamus* to compel the issuance of a certificate of stock, the distinction being herein later pointed out.

In *Fletcher, Cyclopedia of Corporations, vol*. 6, *p*. 3818, it is said:

"The general rule is that *mandamus* will not lie when there is an adequate remedy by ordinary process of law; and since a transferee of a certificate of stock has an adequate remedy at law by an action to recover damages or in equity by a suit to compel the corporation to register his transfer, and issue him a proper certificate, in case the corporation wrongfully refuses to recognize the transfer, most of the courts have held that *mandamus* will not lie."

Opinion.

Then follow citations from California, Connecticut, Georgia, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania and England. The citations so fully bear out the text that extended quotations would seem to be superfluous.

In 2 *Cook on Corporations* (7th *Ed.*), § 390, it is said:

"The weight of authority holds very clearly that *mandamus* will not lie to compel a corporation to allow a registry on its books of a transfer of stock."

To the same effect is *Thompson on Corporations* (2d *Ed.*), §§ 4439, 5761, 5762, and 18 *R. C. L.*, § 106, etc.

Full and instructive notes on the subject gathering together all the authorities may be found in 13 *Ann. Cas.* 299, 16 *Ann. Cas.* 900, 133 *Am. St. Rep.* 728, and 48 *L. R. A.* (*N. S.*) 854.

Freeman, in one of his valuable notes in 133 *Am. St. Rep.* 724, in speaking of a case where a petition had been filed for a *mandamus* to compel the transfer of stock by a corporation, says:

"Indeed, our only surprise is that the application to the court was made at all in the face of the numerous decisions almost on the point. The courts have consistently held that *mandamus* does not lie to compel the transfer of stock by a corporation to a purchaser except in the one case of a judicial sale hereafter referred to, and it would only be repeating the principle to quote at any length the opinions."

While the precise question has never before arisen in Delaware as to the availability of *mandamus* to compel the transfer of stock, the antithesis of this principle has arisen, and one of our earliest cases, *McDowell v. Bank of Wil. & Brandywine*, 1 *Harr.* 27, was an action of trespass on the case for refusing to permit the plaintiff to transfer bank stock on the books of the bank. We can, therefore, I think, assume with safety that *mandamus* will not lie at the instance of an assignee to transfer on the books of the company stock which he has received from the assignor.

In an interesting note on the question as to the availability of *mandamus* to compel the transfer of corporate stock on the books of the company in 133 *Am. St. Rep.* 728, it is said that the general rule is that *mandamus* is not available as a remedy and that—

"The one, and it appears the only, exception is that where shares have been sold under a judicial sale *mandamus* will lie to compel the corporation to transfer such stock."

The theory of this so-called exception seems to be that since the sheriff cannot put the purchaser in possession of the stock sold that the ordinary duty of the corporation's officer becomes an official duty, and, therefore, the proper officer of the corporation becomes *pro hac vice* a public officer under the law, and refusing to perform his public duty, *mandamus* becomes the appropriate remedy. The following authorities have been cited as sustaining this theory: *Bailey v. Strohecker*, 38 *Ga.* 259, 95 *Am. Dec.* 388; *People v. Goss, etc., Mfg. Co.*, 99 *Ill.* 355; *State v. Jeffersonville First Nat. Bank*, 89 *Ind.* 302; *Slemmons v. Thompson*, 23 *Or.* 215, 31 *Pac.* 514; *Hair v. Burnell (C. C.)*, 106 *Fed.* 280.

The Georgia case is easily understood when the Georgia statute is kept in mind. This provides that the officer selling the stock should give to the purchaser a certificate of purchase and on presentation of this certificate to the proper officer to make the transfer on his books and afford the purchaser such evidence of title to the stock purchased as is usual and necessary with other stockholders. The decision was solely on the statute. *Terrell v. Georgia, R. & B. Co.*, 115 *Ga.* 104, 41 S. E. 262.

The Illinois case can have no place as a citation supporting the exception of judicial sales from the general rule denying the availability of *mandamus* as a remedy to compel the transfer of stock for the reason that the Illinois courts like those of Louisiana have never accepted the general rule as to *mandamus* and hold that the writ is granted irrespective of the existence of any other remedy, and this deprives it, so far as they are concerned, of its claim to be an extraordinary legal remedy. 113 *Am. St. Rep.* 724; *Smith v. Automatic Photographic Co.*, 118 *Ill. App.* 649. A statute provides that *mandamus* shall not be denied because there may be another specific legal remedy. *Carus v. Matthiessen*, 196 *Ill. App.* 445.

*State v. First Nat. Bank of Jeffersonville*, 89 *Ind.* 302, was decided solely on the statute which required the sheriff to transfer

the stock on the books of the company. There the *mandamus* was to compel the officers of the company to give the sheriff access to the books to make such transfer. The court recognized the general rule that *mandamus* was not ordinarily available. That the facts in this case make it inapplicable to the case at bar is immediately apparent when it is pointed out that the law of Indiana, certainly when the cited case was decided, provided that no person, even a pledgee of stock, could hold title to the stock until and unless the stock was recorded in his name upon the corporate books of the company. This is so entirely different from the law of Delaware where title passes by the unrecorded transfer of the certificate (*Allen v. Stewart*, 7 *Del. Ch.* 287, 44 *Atl.* 786) that the case can have no application.

In *Durham v. Monumental S. M. Co.*, 9 *Or.* 41, where the interests of third parties by unrecorded assignments appeared, the court refused to order a *mandamus* to compel the transfer of stock; and in *Slemmons v. Thompson*, 23 *Or.* 215, 31 *Pac.* 514, the court approved of the Durham Case and while *mandamus* was there issued under a statute similar to that of Georgia, the court was influenced solely by the facts of the case. The court approved the general doctrine that *mandamus* would not issue when there was an adequate remedy at law and that generally corporate stock constituted no *pretium affectionis*, but there decided that the fact that the directors of the defendant corporation had fraudulently destroyed the market for the stock and removed the adequacy of the remedy by an action for damages made the remedy of *mandamus* available.

Much reliance is placed by the relator upon the case of *Hair v. Burnell* (*C. C.*), 106 *Fed.* 280, as being opposed to the conclusion herein reached. While a federal case, it was determined according to the corporation laws of Iowa. At page 283 the court says it is the law of Iowa that—

"If upon the corporation books stock stands in the name of the judgment debtor, it can be levied on and sold; and this in face of the fact that the creditor has actual notice that the stock has been sold, and actual notice of the fact that the debtor does not own, but has sold, the stock."

This case is readily distinguishable when we keep in mind that the Iowa statute like that of Indiana required the stock to be transferred on the books of the company in order to give to the assignee a title superior to that of one claiming title under an attachment sale where the assignment preceded the attachment.

The Iowa statute and decisions under it may be found in 2 *Cook on Corporations* (7th *Ed.*), *pp.* 1381, 1385, and 1386.

In a note to *Section* 390 of 2 *Cook on Corporations* (7th *Ed.*) it is said:

"It has been held that *mandamus* will issue to aid the sheriff in transferring stock sold on an execution sale. This rule, however, would work harshly in states where the purchaser of the outstanding certificates may have some rights. Where such a possibility exists, the *mandamus* should be denied."

See, also, 2 *Cook on Corporations* (7th *Ed.*), *pp.* 1379, 1380.

[6]   This question has particular application in this state. It is the law of Delaware that stock in a Delaware corporation can be transferred without actual record transfer on the corporate books of the company so as to vest the stock in the transferee unaffected by the subsequent attachment of such shares in a suit against the record holder thereof. *Allen v. Stewart*, 7 *Del. Ch.* 287, 44 *Atl.* 786. This case was afterwards cited with approval in *Lippman v. Kehoe Stenograph Co.*, 11 *Del. Ch.* 190, 98 *Atl.* 943, where it is said:

"In other words, * * * the assignee of shares acquired title to the shares as against the assignor independent of the actual transfer thereof on the books of the company."

This principle seems to be well supported by the decisions in many jurisdictions, and, indeed, it is a matter of common knowledge that in matters involving a pledge of shares it is usually arranged by depositing the certificate of the shares in the hands of the pledgee accompanied with a blank power of attorney and the certificate is seldom, if ever, actually transferred on the books of the company to the name of the pledgee.

[7]   In the principle above referred to lies the controlling feature, the "*ratio decidendi*," of this case. Where this principle has been applicable no court, so far as we are aware, has held that

*mandamus*, in its common-law nature, would lie to compel a company to transfer stock on its corporate books without the assignment and surrender of the certificate regardless of whether the application was made by an assignee under private contract or by the purchaser of the stock at a judicial sale.

The dangers attending the transfer of stock by a corporation where the stock has been sold under execution or attachment process is set out in 2 *Cook on Corporations* (7th *Ed.*), § 489.

It is true that our statute provides that a sale made, returned and confirmed transfers "the shares sold to the purchaser as fully as if the debtor or defendant had transferred the same to him according to the charter and by-laws of the company" (*Rev. Code*, 1915, § 2011), and that "any assignment or transfer thereof by the debtor after attachment" is void (*Rev. Code*, 1915, § 2011).

Now, as we have heretofore pointed out, if the debtor has assigned the stock to the purchaser according to the charter and by-laws of the corporation, so far as they are made known to us, yet under the law of this state the assignee could not have invoked the remedy of *mandamus* to compel the transfer. How, then, can the purchaser at the sale, who gets no greater rights and acquires no superior title by the public sale than he would have acquired under a private arrangement invoke *mandamus* to aid him in the transfer? He not only acquires no greater rights, but he lacks one great essential—the certificate itself—the evidence of title and the medium of assignments.

So important in this state is the ownership and possession of certificates of stock that special provision is made under our statutes for the issuance of new certificates where the original certificates may have been lost or destroyed. The statute prescribes that a formal hearing shall be had in court where due proof must be made of all of the circumstances of the loss or destruction. The court will not order a new certificate to be issued unless the applicant therefor enters into a bond indemnifying any person who shall thereafter appear to be the lawful owner of such certificate stated to have been lost or stolen. The statute provides that then

the corporation is relieved from liability and any person injured may have recourse to the bond.

[8]   We are asked by the relator to compel the defendant company by *mandamus* to transfer the 482,100 shares sold by the sheriff to the name of the purchaser with no provision for a bond of indemnity or other measure to safeguard any outstanding interests.   An individual whose title is undisputed in any way could not obtain redress to this extent.   Under the law of this state, the return to the alternative writ of *mandamus* is taken to be true. *State v. Wilmington Bridge Co.*, 3 *Harr.* 540; *State, ex rel. Brumley, v. J. & M. Paper Co.*, 1 *Boyce* 379, 77 *Atl.* 16, 30 *L. R. A.* [*N. S.*] 290.   By the return in this case we are informed that 5,000 shares had been assigned and actually transferred on the books of the company four days before the attachment was laid and that prior to the attachment 246,500 additional shares (all part of those attached) had actually been sold, assigned and the certificates delivered although the transfer had not been noted on the books of the defendant company.   Whether the remaining 230,600 shares or any part of them have been sold, assigned or pledged by the attachment debtor, or whether they were still remaining in his possession and ownership, does not appear.

[9]   This possible but uncertain assignment of the shares, without recordation thereof, becomes of great moment in view of the law of this state.   As we have pointed out, an assignment is valid as between the parties without any record thereof on the books of the company, and any possible but unknown assignee is not and cannot be made a party to these proceedings.   An attachment looking toward the sale of shares of stock is in the nature of an *ex parte* proceeding.   It is not a garnishment, and the company in whose hands the attachment is laid makes no answer and does nothing but give a certificate of the number of shares standing in the name of the debtor on the books of the company.   No service of process is had upon the company in the sense of making it a party to the suit and the company may have no notice whatever as to the person holding the stock of the company.   *Fowler v.*

*Dickerson & Tweedale*, 1 *Boyce* 113, 74 *Atl.* 601; *Mann v. Peer*, 4 *Penn.* 279, 55 *Atl.* 335.

Except where dividends are to be paid and received, and except where rights of a stockholder are to be enjoyed, as at a corporate election, the company may not be at all interested in the holding of the shares. Of course, for these purposes the books of the company must be the evidence of ownership.

We are, as we have said, asked to compel the transfer of 482,100 shares of stock to the name of the relator and to compel the issuance of a new certificate for such stock. The return of the defendant states that the compliance with a peremptory writ, if issued as prayed for, would result in an overissue of stock in violation of the laws of Delaware. There is respectable authority for the view that where the whole capital stock has been issued and the certificates therefor are outstanding a court cannot order the issuance of other certificates, unless the decree at the same time practically nullifies a corresponding outstanding certificate.

We are clearly of the opinion that *mandamus* cannot issue in this case to compel the transfer on the books of the defendant company of the shares of stock in question to the name of the relator.

A corollary to the right to compel the transfer of the stock on the books of the defendant company is the attempt to compel the issuance of a new certificate for the shares attached and sold to the relator. The matters are not identical although the courts in many jurisdictions have drawn no distinction between them. While many of the reasons tending to show the unavailability of the writ of *mandamus*, viz., the presence of other adequate legal remedy such as an action on the case or relief by bill in equity apply equally to an action to compel the transfer of shares and an action to compel the issuance of a certificate yet there are points of dissimilarity. In the matter of compelling a transfer of stock, especially where the applicant does not have in his possession the certificate for such shares, the legal right to the shares may and often is an undetermined question and, therefore, the relator may have no clear legal right to be enforced. Often, however, where his legal right is fixed and absolute the court will compel the is-

suance of a certificate to evidence the fact of ownership as appearing on the books of the company. 5 *Fletcher Cyc. of Corp.*, § 3484. It is unnecessary in this case to further draw the distinction because, having determined that the relator is not entitled to the transfer of the shares on the books of the company, the court will not, of course, order the defendant company to issue certificates to the relator for the shares purchased by him.

The motion to quash the return to the alternative writ is, therefore, denied.