**CAPITAL EDUCATORS ASSOCIATION, Plaintiff,**

v.

**Harry F. CAMPER et al., Defendants.**

Court of Chancery of Delaware, Kent.

May 2, 1974.

Jacob Kreshtool, of Bader, Dorsey & Kreshtool, Wilmington, for plaintiff.

N. Maxson Terry, Jr., of Terry & Terry, Dover, for defendants.

BROWN, Vice Chancellor.

Plaintiff, Capital Educators Association, (hereafter "CEA") is the duly certified exclusive negotiating representative of all nonadministrative certified school employees of the Capital School District. It seeks a preliminary injunction against the defendant members of the Board of Education of the Capital School District (hereafter referred to collectively as "the Board") to enjoin them "from refusing to negotiate in good faith" on a new teachers' contract for the forthcoming school year. CEA initially sought a temporary restraining order which was denied on January 29, 1974.

Since the time of the restraining order application, several issues have apparently been resolved by the parties, but the basic problem still remains. Briefly stated, because of its experience when the presently existing contract between the teachers and the Board was negotiated (including numerous long meetings, outspoken commentary in the news media, community turmoil, court appearances and an eventual work stoppage by the teachers which closed the schools for several days) the Board has taken the position that it will not negotiate until such time as CEA will agree that both parties be governed by a set of bargaining ground rules proposed by the Board. Its reason for taking this position is perhaps best summarized by the following language of the affidavit of the defendant, Harry F. Camper:

"2. In the past, negotiations over the Master Contract have taken a great deal of time primarily because the negotiations proceeded on a disorganized basis with no ground rules to govern the procedure. A primary cause of the strike which occurred during the negotiations for the existing contract was because, there were no ground rules, some of the

negotiating sessions were conducted in a circus like atmosphere with many people in attendance; each side had more than one spokesman; outside consultants were brought in unforeseen to some meetings resulting in confusion and creating a situation where the Board negotiators were unable to respond immediately. When an agreement was nearly reached with the teachers, the teachers then introduced a brand new salary package for the second year of the contract which had been unanticipated by the Board when it made its decisions on the other issues thus creating confusion and leading to a breakdown of negotiations."

CEA has now agreed to proposed groundrules which, among other things, require designated spokesmen for each side at meetings, provide for the order and notice of meetings, regulate the manner in which experts and consultants may be utilized, etc. There remains, however, one last stumbling block as exemplified by the language of proposed groundrules 3.1 and 3.2 set forth hereafter:

"3.1 *All issues* proposed for discussion shall be submitted in writing by the Association [CEA] to the Board . . . at the first meeting.

"3.2 The Board shall submit in writing to the teacher representatives, no later than the second meeting, a counter proposal *including all additional issues upon which it wishes to negotiate*." (Emphasis Added)

CEA takes the position that the Board has no power to compel it to submit all of its demands at once before offering to consider any one of them. CEA claims that it is ready, and has been ready for months, to commence bargaining, at least on certain minor issues which, in all probability, could have been disposed of by now. It argues that 14 Del.C. Ch. 40 gives school employees the right to bargain on all matters involving salaries, working conditions and employee benefits and that the Board, by

requiring as a condition precedent to negotiating that CEA restrict itself to issues presented at the first meeting, is attempting to curtail the lawful right of its members to bargain on new issues which might be brought to light during negotiations. CEA asks the Court to enjoin the Board from relying on such an unlawful condition so as to thereby require it to enter into negotiations forthwith.

In response, the Board takes the position that it is CEA that is refusing to bargain in good faith as required by the statute. It points out that 14 Del.C. § 4008, the statute authorizing collective bargaining on behalf of school employees, does not require the Board to negotiate piecemeal on a few issues at a time without knowing what the full range of issues might be, especially since funds available to it are necessarily restricted by the school tax structure. It states that it only desires that both sides be fully cognizant of all areas for negotiation at the outset so that the give and take process may proceed freely and an otherwise satisfactory agreement not be shattered at the last minute by the interjection of some new and unforeseen demand.

In addition, however, although the Board professes a practical desire to get this controversy resolved as soon as possible, it also feels compelled to advance two technical arguments. First, it points out that since the existing contract does not expire until June 30, and since in the past new contracts have been consummated months after the old one has expired and simply made retroactive in effect to the expiration date of the previous contract, there is no threat of immediate harm at present, such threat being essential to the issuance of a preliminary injunction. Second, since CEA is in reality seeking to compel the Board to carry out a function required by statute, the suit properly lies in mandamus and thus this Court lacks jurisdiction.

While the public interest of the community entices me to attempt a final resolution of the matter, I fear that the last two points are dispositive of the present application in this Court. I cannot in good conscience find that there presently exists any threat of *immediate* harm to CEA. Based on past experience and the way things are going now, there is a clear likelihood that eventual harm will come next fall to the teachers as well as the community and the school system the Board is charged with maintaining if the parties do not soon get at it. At this time, however, the present contract still has some two months to go and the need for having teaching personnel at their desks does not manifest itself in the entirety until September. CEA justifies its position by asserting that in the past it has generally taken some six months before an accord could be reached. However, it does not follow that it must of necessity take so long this time, particularly if the previously experienced chaos and misunderstanding is minimized by those procedural groundrules to which both sides now agree.

 It is fundamental that a preliminary injunction may not be granted unless some otherwise inevitable and irreparable injury looms eminent to the party seeking it. Bayard v. Martin, 34 Del. 184, 101 A. 2d 329 (1954) cert. den. 347 U.S. 944, 74 S.Ct. 639, 98 L.Ed. 1092; High, Injunctions (4th Ed. 1905) 36. Such is not the case here. At best CEA presents a threat of future injury which, standing alone, will not justify interlocutory injunctive relief. Bayard v. Martin, *supra.*

Secondly, although CEA has admittedly adjusted the legal rationale relied upon by it at the restraining order argument to now contend that it does not seek a mandatory injunction so much as it seeks to enjoin the Board from demanding agreement on all groundrules as a condition precedent to bargaining, the fact remains that what it in reality asks for, whether through the back door or the front, is an order from this

Court to cause the Board to commence negotiations at once. The statute on which it relies, 14 Del.C. § 4008 reads, in pertinent part, as follows:

"(a) The Board of Education, or its representative and the exclusive negotiating representative of the public school employees, through their designated officials or representatives, and *upon the request of either party*, shall have the *duty to negotiate in good faith* with respect to salaries, employee benefits, and working conditions."

"(b) The Board of Education or its representative and the exclusive negotiating representative of the public school employees *shall meet* at reasonable times *and confer in good faith* with respect to the matters covered by section 4006(a) of this title." (Emphasis Added)

■ The statute, by its terms, makes active negotiation at the request of either side the "duty" of the other. The direction to meet and confer in good faith is mandatory and all that is required to trigger this obligation is a request to do so by the other party. Thus, if a reasonable request is made in good faith by either a local board of education or the negotiating agent of the school employees, one to the other, to confer on salaries, employee benefits or working conditions, the statute mandates that the party on whom the request is made must meet and discuss the issues presented in good faith. There is no discretion involved.

■ Where the object of a suit is to compel the performance of an obligation arising out of official station or imposed by law upon the respondent, the remedy lies in the common law action for mandamus. 55 C.J.S. Mandamus § 3 p. 21. While mandamus may not be sought to create a duty, it is historically the proper remedy to coerce performance of a pre-ex-

isting duty. State ex rel Cooke v. New York-Mexican Oil Co., Del.Super., 2 W. W.Harr. 244, 122 A. 55 (1923). A writ of mandamus is a command which can be issued by a court of law having competent jurisdiction, to an inferior tribunal or board, among others, to require the performance of some duty attached to the official position of the party to whom the writ is directed. State ex rel Lyons v. McDowell, Del.Super., 5 Terry 134, 57 A. 2d 94 (1947).

■ Where the duty sought to be enforced does not involve the exercise of discretion, but is ministerial only, mandamus has traditionally been deemed an adequate legal remedy. Webb v. Diamond State Telephone Company, Del.Ch., 237 A.2d 143 (1967). It has been held a proper remedy to require a school board to perform duties imposed upon it by law. 55 C.J.S. Mandamus § 125 p. 213.

By 10 Del.C. § 564 it is provided that all proceedings in mandamus shall be commenced in the Superior Court. It is further established by 10 Del.C. § 342 that the "Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law . . . before any other court or jurisdiction of this State".

■ Clearly what CEA seeks is an order directing the Board to desist in its reliance on a pre-condition to bargaining which CEA feels is unauthorized and to get on with its statutory obligation to negotiate in good faith. Stated another way, it complains that the Board has a clear legal duty to start negotiations and that it cannot lawfully refuse to do so for the reason it has given. CEA, in my opinion, is thus unquestionably attempting to compel the Board to perform a ministerial function imposed upon it by statute, namely, to sit down at the bargaining table and start talking now that it has been requested

to do so. To achieve this purpose, its remedy lies in mandamus and consequently this Court has no jurisdiction. Moreover, if there is a clear statutory duty to act which can be enforced through a mandamus action, the need to demonstrate an immediate threat of irreparable injury as a prerequisite to the relief becomes of less significance.

Accordingly, the preliminary injunction is denied and the complaint in this Court will be dismissed, subject to the right of CEA, if it feels that it is appropriate and expeditious to do so, to transfer this action to the Superior Court pursuant to 10 Del. C. § 1901. Counsel are directed to agree upon and submit a form of order embodying this result.